**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| STEFAN BATCHELOR | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 24-1258 |
| | : | |
| LIEUTENANT SPAGNOLETTI, | : | |
| SUPERINTENDENT J. TERRA, UNIT | : | |
| MANAGER S. GRADY, CAPTAIN | : | |
| YOUNG | : | |

## MEMORANDUM

KEARNEY, J.                                                                          April 17, 2024

A correctional officer pinned an incarcerated person on the floor of his restricted housing unit and sprayed him with oleoresin capsicum spray approximately three months ago. The officer did so in the presence of other incarcerated persons. The officer knew the incarcerated person recently complained about the facility's conditions. The incarcerated person suffered injury. The correctional officer attempted to coerce witnesses to not support the incarcerated person's complaint. The incarcerated person complained. The facility allegedly did not address his complaint. The incarcerated person now sues without counsel and is unable to pay the filing fees. We today screen his allegations and claims the officer and his supervisors violated, and conspired to violate, his First, Eighth, and Fourteenth Amendment rights, and are liable for assault and battery. The incarcerated person may proceed on his First Amendment retaliation claim, Eighth Amendment excessive force claim, and state law assault and battery claim against the officer allegedly spraying him with oleoresin capsicum spray in retaliation for earlier complaints. We dismiss with prejudice the Fourteenth Amendment and official capacity claims with prejudice. We dismiss his remaining claims without prejudice.

## I.    Alleged *pro se* facts

Stefan Batchelor is currently serving a sentence under the custody of the Pennsylvania Department of Corrections at State Correctional Institution Phoenix.[1] SCI Phoenix placed Mr. Batchelor in the restricted housing unit. Mr. Batchelor used SCI Phoenix's internal complaint system at unspecified times before January 25, 2024 to report correctional officers, including Lieutenant Spagnoletti, for unpleaded "violations of his protected rights."[2]

### The January 25, 2024 conduct

Lieutenant Spagnoletti approached Mr. Batchelor on the morning of January 25, 2024.[3] Lieutenant Spagnoletti "openly and verbally expressed his dislike" for Mr. Batchelor as he had on earlier occasions.[4] Lieutenant Spagnoletti told Mr. Batchelor, "Your [sic] always complaining" and "I can't wait until someone kicks your ass or staff is given a chance to shut your f—ing mouth."[5]

An unnamed correctional officer opened Mr. Batchelor's cell door in the restricted housing unit at lunch time on January 25, 2024.[6] The unnamed officer acted "outside of policy" by not restraining Mr. Batchelor before opening his cell door in a level five security housing unit.[7] Mr. Batchelor alleges "staff who seek unethical retribution against disliked inmates such as [Mr. Batchelor] routinely orchastrate [sic] situations" where they open cell doors without first restraining incarcerated persons.[8] Correctional officers do this to provoke the unrestrained incarcerated persons "so that the use of force can be justified against those inmates who reacts [sic] to the bait."[9]

After opening his cell door midday on January 25, 2024, several unnamed correctional officers then restrained Mr. Batchelor by handcuffing him behind his back while Mr. Batchelor laid on his stomach.[10] Mr. Batchelor did not resist the officers. Several unnamed officers pinned

2

Mr. Batchelor to the ground.[11] Lieutenant Spagnoletti "mercilessly sprayed [Mr. Batchelor] in the face with a chemical agent [oleoresin capsicum or 'OC Spray'] . . . until the container was empty."[12]

Mr. Batchelor required medical attention for injuries from "the weight of several officers pinning him to the ground and restricting his ability to breathe" and the effects of the oleoresin capsicum spray which triggered Mr. Batchelor's asthma.[13] Mr. Batchelor has since developed problems with his vision in his right eye.[14] Mr. Batchelor suffers blurred and double-vision in his right eye, causing frequent headaches, and "anxiety and paranoia – feeling as though he will eventually be set up to be attacked, which has also resulted in loss of sleep, increased frustration and a general skepticism for [Department] employees."[15]

### Persons witnessed the January 25, 2024 incident.

The incarcerated Richard Kemper and Khalil Hammond witnessed the January 25, 2024 incident. Mr. Kemper recalls "[Mr.] Batchelor being on the ground non resisting [sic] and then out of nowhere Lieutenant Spagnoletti damn near empty his OC spray can on [Mr.] Batchelor spraying him in his eyes and face."[16] Mr. Kemper recalls the spray caused everyone in the area to choke and Mr. Kemper "even coughed up blood."[17] Mr. Kemper describes Mr. Batchelor "damn near died from his asthma."[18]  Mr. Hammond also "observed inmate [Mr.] Batchelor being held on the ground by several correctional officers" while Mr. Batchelor was "cuffed behind the back and not moving" or resisting.[19] Mr. Hammond recalls "all of a sudden Lieutenant Spagnoletti began spraying [Mr.] Batchelor in the face with OC Spray, causing Batchelor as well as other in close proximity to cough and gasp for air."[20] Mr. Hammond heard Lieutenant Spagnoletti tell Mr. Batchelor "something to the effect of 'how's that, you asshole.'"[21] Mr. Hammond also heard

"Lieutenant Spagnoletti make threats to assault [Mr.] Batchelor that same day and on other occasions, at which times he called Batchelor a snitch for filing paperwork against him."[22]

### Unnamed correctional officers ask Mr. Kemper and Mr. Hammond to speak with Mr. Batchelor.

Unnamed correctional officers asked Messrs. Kemper and Hammond to speak with Mr. Batchelor and try to convince him not to bring unwanted attention to the January 25, 2024 spraying incident.[23] On the same day as the spraying incident, an unnamed correctional officer asked Mr. Kemper to "try to talk to [Mr. Batchelor] so he don't get attention down here."[24] Mr. Kemper responded, "Whatever attention is bought [sic] would be good.  So this won't keep happening again. And again. And again to other prisoners."[25] Mr. Hammond claims one week after the spraying incident "one of the escorting officers ask[ed] me did I mind asking [Mr.] Batchelor to drop his complaint against Spagnoletti and if I did he'd ensure I received some E-cigarettes."[26] Mr. Hammond declined the offer.[27]

### Mr. Batchelor reports the spraying incident.

Mr. Batchelor contacted the Department's abuse hotline several times in February 2024.[28] Mr. Batchelor wrote to Superintendent Joseph Terra, Security Captain Young, and SCI Phoenix's Intensive Management Unit Manager Grady describing his complaint.[29] He spoke to Unit Manager Grady and medical personnel during medication rounds.[30] The Department ignored Mr. Batchelor's abuse allegations.[31] Superintendent Terra, Unit Manager Grady, and Security Captain Young "maliciously falsified dispositions/reports" to avoid penalizing Lieutenant Spagnoletti.[32]

## II.    Analysis

Mr. Batchelor *pro se* sues Lieutenant Spagnoletti, Superintendent Terra, Unit Manager Grady, and Security Captain Young in their individual and official capacities.[33] Mr. Batchelor's

*pro se* Complaint, construed in the most liberal fashion without speculation, seemingly tries to plead claims against these individuals for: violating the First, Eighth, and Fourteenth Amendments; civil conspiracy under Pennsylvania law; and assault and battery under Pennsylvania law.[34] Mr. Batchelor claims the Department of Corrections employees violated his civil rights through "the use of excessive force…and the conspiratorial circumvention of adequate investigation meant to cover-up the abuse suffered."[35]    Mr.    Batchelor    claims Lieutenant Spagnoletti used excessive force on January 25, 2024 "in furtherance of a retaliory [sic] campaign of harassment" in response to complaints filed by Mr. Batchelor against staff including Lieutenant Spagnoletti.[36] Mr. Batchelor also alleges Superintendent Terra, Unit Manager Grady, and Security Captain Young were deliberately indifferent to abuse by subordinates, maintained an "unwritten custom of covering up staff abuses," and failed to properly train and supervise Lieutenant Spagnoletti in the Department's use-of-force policy and procedure.[37] Mr. Batchelor seeks compensatory damages, punitive damages, declaratory relief, injunctive relief, costs, and attorney's fees.[38]

We must screen Mr. Batchelor's allegations for merit before issuing summons. Congress requires us to screen Mr. Batchelor's Complaint under 28 U.S.C. § 1915A.[39] We must "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."[40] We must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted."[41]

We apply the same standard used under Federal Rule of Civil Procedure 12(b)(6) when considering whether to dismiss a complaint for failure to state a claim under section

1915A(b)(1).[42] A complaint containing "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" satisfies the standard under Rule 12(b)(6).[43] We accept all factual allegations in Mr. Batchelor's Complaint as true and must construe those facts in the light most favorable to him when determining whether he states a claim to relief plausible on its face.[44]

We are directed by our Court of Appeals to be "mindful of our obligation to liberally construe a *pro se* litigant's pleadings particularly where the *pro se* litigant is imprisoned."[45] We are to "remain flexible" and "apply the relevant legal principle even when the complaint has failed to name it."[46] But "*pro se* litigants still must allege sufficient facts in their complaints to support a claim" and "cannot flout procedural rules–they must abide by the same rules that apply to all other litigants."[47]

We review Mr. Batchelor's First, Eighth, and Fourteenth Amendment claims mindful Congress, under section 1983, allows persons to seek relief for constitutional claims in federal court.[48] "To state a claim under [section] 1983, [Mr. Batchelor] must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[49] "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.[50]

### A. We dismiss Mr. Batchelor's claims against the state actors in their official capacities.

Mr. Batchelor sues Lieutenant Spagnoletti, Superintendent Terra, Unit Manager Grady, and Security Captain Young—all of whom are Pennsylvania Department of Corrections employees—in their individual and official capacities.

The Eleventh Amendment bars suits against a state and its agencies in federal court which seek monetary damages.[51] "Suits against state officials acting in their official capacities

are really suits against the employing government agency, and as such, are also barred by the Eleventh Amendment."[52] We dismiss the official capacity claims against the Pennsylvania Department of Corrections employees seeking monetary damages with prejudice because they are essentially claims against the Department of Corrections barred by the Eleventh Amendment.

But "a state official in his or her official capacity, when sued for injunctive relief, would be a person under [section] 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'"[53] For Mr. Batchelor's official capacity claims to survive, "[t]he relief sought must be prospective, declaratory, or injunctive relief *governing an officer's future conduct* and cannot be retrospective."[54] To determine whether the claim survives, we "need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."[55] Our Court of Appeals expressed the maxim as a standing issue; where a plaintiff seeks "backward-looking" retrospective relief in the form of money damages, standing may be established through evidence of past injury.[56] Where a plaintiff seeks "forward-looking" prospective relief in the form of an injunction or declaratory judgment, he must show he is "likely to suffer *future* injury" which must also be "'imminent,' meaning that it is 'certainly impending' rather than just merely 'possible.'"[57]

Mr. Batchelor seeks injunctive relief against Superintendent Terra to "ensure[] no further contact between [Mr. Batchelor] and Spagnoletti."[58] Mr. Batchelor also seeks a declaration "each defendant violated [Mr. Batchelor's] rights and the law as described throughout the complaint."[59] Mr. Batchelor alleges only past conduct of the Department of Corrections employees and seeks an award of monetary damages for the conduct. Mr. Batchelor bases his request for "no further contact" with Lieutenant Spagnoletti on one prior interaction with Lieutenant Spagnoletti rather

than allegations of ongoing constitutional violations. Mr. Batchelor's request for declaratory relief also concerns past conduct. Past injury is not a basis for injunctive or declaratory relief.[60] Mr. Batchelor does not allege any future injury or ongoing conduct to support the requested declaratory or injunctive relief. His claims cannot be considered prospective in nature. The Eleventh Amendment bars his claims.

Mr. Batchelor also requests Superintendent Terra place him in an "individual step down program" in preparation for his reentry because if he remains in the restricted housing unit he will be "ill-prepared for society."[61] We deny Mr. Batchelor's request for an individual step-down program because it bears no relation to the Mr. Batchelor's underlying constitutional or state law claims.[62] We also note Mr. Batchelor does not have a constitutional right "to be confined in any particular housing unit in a prison."[63]

We now address Mr. Batchelor's claims against these state actors in their individual capacities.

### B. Mr. Batchelor pleads a First Amendment retaliation claim against Lieutenant Spagnoletti.

Mr. Batchelor claims Lieutenant Spagnoletti violated his First Amendment right when he mercilessly sprayed him in the face with chemical agent oleoresin capsicum "until the container was empty" in retaliation for Mr. Batchelor filing complaints against him.[64]

The First Amendment protects individuals from retaliatory actions for engaging in protected speech.[65] Mr. Batchelor must allege: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him.[66]

8

As to the first element, "[t]he filing of grievances and lawsuits against prison officials constitutes constitutionally protected activity."[67] Informal, oral grievances may also qualify as constitutionally protected activity.[68] Mr. Batchelor alleges the first element when he states he used the "internal complaint system to report staff violations of his protected rights."[69]

The second element—whether Mr. Batchelor suffered an adverse action—calls for a case-specific analysis.[70] An "adverse action" is one which would "deter a person of ordinary firmness" from exercising his First Amendment rights.[71] "This requirement is not too demanding."[72] The adverse action must amount to more than a trivial inconvenience.[73] Mr. Batchelor pleads an adverse action against Lieutenant Spagnoletti because he alleges Lieutenant Spagnoletti pinned him to the ground restricting his breathing and sprayed him in the face with oleoresin capsicum causing impaired vision.

As to third element—whether Mr. Batchelor's constitutionally protected conduct amounted to "a substantial or motivating factor" for the adverse action—Mr. Batchelor must allege "which grievances led to the purported retaliation, which prison officials retaliated, and how he knows that their conduct was substantially motivated by his protected activity."[74] Where a causal link cannot be shown with direct evidence, Mr. Batchelor may try to satisfy his burden by showing: "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link."[75]

Mr. Batchelor pleads a sufficient causal connection between the complaints he made against Lieutenant Spagnoletti and the adverse action Lieutenant Spagnoletti took against him. Mr. Batchelor alleges (1) he complained about Lieutenant Spagnoletti and other staff at some point before January 25, 2024, and (2) on the morning of January 25, 2024, Lieutenant

Spagnoletti "openly and verbally expressed his dislike" for Mr. Batchelor and told him, "Your [sic] always complaining" and "I can't wait until someone kicks your ass or staff is given a chance to shut your f—ing mouth" before using force against Mr. Batchelor at lunch time on the same day.[76]

Mr. Batchelor alleges a pattern of antagonism when he claims Lieutenant Spagnoletti expressed his dislike for Mr. Batchelor "that day as well as on prior occasions"; retaliated against Mr. Batchelor with unnecessary force "due to prior filed institutional complaints"; and engaged in a "retalitory [sic] campaign of harassment motivated by [Mr. Batchelor's] prior filed complaints against him."[77] Mr. Hammond, who witnessed the spraying event, stated it was "no surprise" Lieutenant Spagnoletti sprayed Mr. Batchelor with oleoresin capsicum because he has "heard Lieutenant Spagnoletti make threats to assault Batchelor that same day and on other occasions, at which times he called Batchelor a snitch for filing paperwork against him."[78]

Mr. Batchelor pleads facts showing a causal link between the exercise of his constitutional rights—filing complaints and grievances—and the adverse action allegedly taken against him—Lieutenant Spagnoletti spraying him.

Mr. Batchelor sufficiently pleads Lieutenant Spagnoletti's use of oleoresin capsicum spray violated his First Amendment rights.

### C. Mr. Batchelor pleads an Eighth Amendment claim against Lieutenant Spagnoletti but not Superintendent Terra, Unit Manager Grady, or Security Captain Young.

Mr. Batchelor claims Lieutenant Spagnoletti, Superintendent Terra, Unit Manager Grady, and Security Captain Young violated his Eighth Amendment right to be free from cruel and unusual punishment. Mr. Batchelor states an Eighth Amendment claim against Lieutenant Spagnoletti based on his use of excessive force but does not allege sufficient facts to support a finding of supervisory liability.

10

### 1. Mr. Batchelor pleads an Eighth Amendment claim for excessive force against Lieutenant Spagnoletti.

Mr. Batchelor claims Lieutenant Spagnoletti used excessive force on Mr. Batchelor by spraying him in the face with oleoresin capsicum spray as Mr. Batchelor laid on his stomach with handcuffs behind his back.

The Eighth Amendment prohibits cruel and unusual punishment including correctional officers inflicting "unnecessary and wanton" pain on incarcerated individuals.[79] Use of excessive force against an incarcerated individual may constitute cruel and unusual punishment even when the injury is not "serious."[80] We look at the nature of force used.[81]

Eighth Amendment claims have an objective and subjective component.[82] A correctional officer must act with a "sufficiently culpable state of mind" and the conduct must be "objectively harmful" to the incarcerated individual.[83] We look at whether the officer applied force "in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."[84] When evaluating the officer's interest we consider: (1) the need for using force; (2) the relationship between force used and necessary force; (3) the injury inflicted; (4) the threat to safety of incarcerated individuals and staff as perceived by the officers; and (5) mitigation efforts to "temper the severity of the forceful response."[85]

A correctional officer's use of oleoresin capsicum spray can be considered excessive force when it does not further an effort to maintain or restore discipline.[86] But it is not a violation of the Eighth Amendment to use oleoresin capsicum spray on an incarcerated individual if they repeatedly disobey a correctional officer's order.[87]

Mr. Batchelor's allegations allow us to plausibly infer Lieutenant Spagnoletti used the oleoresin capsicum spray not to maintain or restore discipline but instead to cause Mr. Batchelor harm. Mr. Batchelor alleges he was not resisting when Lieutenant Spagnoletti "mercilessly"

11

sprayed him in the face while he laid on his stomach with handcuffs behind his back.[88] One witness described Lieutenant Spagnoletti's use of force as "out of nowhere" and another described Mr. Batchelor as not moving when Lieutenant Spagnoletti "all of a sudden" began spraying him in the face.[89] Rather than try to temper the severity of the forceful response, Lieutenant Spagnoletti sprayed Mr. Batchelor until he emptied the can of oleoresin capsicum as other correctional officers looked on.  A witness claims he and others in the vicinity, though they were not directly sprayed, were still gasping for air and one witness even coughed up blood.[90] Mr. Batchelor pleads Lieutenant Spagnoletti's actions triggered his asthma and impaired his vision—injuries which required medical attention.[91] These injuries are not *de minimis*. We will await Lieutenant Spagnoletti's responses and discovery.

Mr. Batchelor sufficiently pleaded Lieutenant Spagnoletti's use of oleoresin capsicum spray violated the Eighth Amendment.

### 2.  Mr. Batchelor does not plead Eighth Amendment claims against Superintendent Terra, Manager Grady, and Captain Young.

Mr. Batchelor sues Superintendent Terra, Unit Manager Grady, and Security Captain Young for Eighth Amendment violations under a "supervisory liability" theory. Mr. Batchelor claims Superintendent Terra, Unit Manager Grady, and Security Captain Young are personally liable as supervisors at SCI Phoenix and were not only deliberately indifferent to subordinates' "routine abuses" in the restricted housing unit but also "condoned, tolerated, and acquiesced in" the abuses without investigation.[92] Mr. Batchelor also claims Superintendent Terra, Unit Manager Grady, and Security Captain Young violated the Eighth Amendment by failing to properly train and supervise Lieutenant Spagnoletti in the Department's use-of-force policy leading to the spraying incident; failing to discipline or investigate staff for violations of policies

to avoid constitutional violations; and enforcing unwritten unconstitutional policies and customs which allow for "cover-ups" and further abuses to incarcerated people.[93]

We recognize two theories of supervisory liability under section 1983.[94] Supervisors may face liability for unconstitutional acts undertaken by subordinates when: (1) they participated in violating an individual's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct, making them personally liable under section 1983; or (2) they created and upheld a policy, practice, or custom, with "deliberate indifference to the consequences," which directly caused the constitutional harm.[95] But "liability may not be based solely on a theory of *respondeat superior*; the official must have had some personal involvement in the events giving rise to the cause of action."[96]

Under the first theory, generalized allegations a supervisory state actor is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation.[97] To establish knowledge and acquiescence of a subordinate's misconduct, Mr. Batchelor must allege the supervisor's: "(1) contemporaneous knowledge of the offending incident or knowledge of similar incidents in the past, and (2) actions or inactions which communicated approval of the subordinate's behavior."[98] Alleging the supervisor "had constructive knowledge of a subordinate's unconstitutional conduct simply because of his role as a supervisor" does not suffice.[99]

We are guided by our Court of Appeals's analysis three years ago in *Saisi v. Murray* addressing an incarcerated person's efforts to hold the jail warden, among others, liable for unconstitutional conditions of confinement based on supervisory liability.[100] Mr. Saisi did not plead facts showing the jail warden's actual knowledge of the violations or his participation in them.[101] He instead based his supervisory liability theory on allegations jail employees believed

the jail warden would "tolerate" violations occurring in the jail.[102] Our Court of Appeals held the jail warden cannot be liable as a supervisor "simply because of his position" without more facts about his knowledge or participation.[103]

To state a claim under the second theory, Mr. Batchelor must: "(1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or practice created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk, and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure."[104] Under a sub-category of the second theory, a supervisor may be liable for failure to train or supervise their employees.[105]

Like the incarcerated person in *Saisi*, whose supervisory liability theory relied on his own "belief", Mr. Batchelor pleads no facts showing Superintendent Terra, Unit Manager Grady, or Security Captain Young's actual knowledge or participation under the first theory of supervisory liability. Mr. Batchelor pleads Lieutenant Spagnoletti "believe[d] that his abuse of [Mr. Batchelor] would be condoned/tolerated by his superiors" and vaguely alleges Superintendent Terra, Unit Manager Grady, and Security Captain Young "are aware of a culture of abuse and excessive force in the [restricted housing unit]" and "assist [subordinates] in 'the cover-up.'"[106] Mr. Batchelor does not plead how they assisted in the "cover-up" or detail any specific actions the alleged supervisors took which communicated their approval of the alleged abuse by subordinates. Without more, Mr. Batchelor's conclusory claims against Superintendent Terra, Unit Manager Grady, and Security Captain Young resemble the incarcerated individual's claims in *Saisi*—seeking liability based on job title rather than facts.

Mr. Batchelor's claim fails under the second theory because he does not identify a specific policy, practice, or custom resulting in a violation of his constitutional rights nor Superintendent Terra, Unit Manager Grady, or Security Captain Young's knowledge of the policy, practice, or custom.[107] Mr. Batchelor seems to allege an unwritten practice of correctional officers opening disliked incarcerated persons' cell doors without restraining them in an attempt to provoke the incarcerated person to act in a way which justifies the officers' use of force. Mr. Batchelor does not explain how this alleged practice results in a violation of his constitutional rights. While officers who open cell doors without first restraining incarcerated persons in the restricted housing unit may be acting outside of policy, we see no constitutional violation where an officer *justifiably* uses force in response to an inmate's disorderly conduct or noncompliance.

Mr. Batchelor also pleads no facts showing Superintendent Terra, Unit Manager Grady, and Security Captain Young are supervisors. If Mr. Batchelor seeks to hold these individuals liable for knowledge and acquiescence, he must show they are "the person in charge."[108] Mr. Batchelor still fails to state a claim even if we assume they are in charge. Mr. Batchelor alleges Superintendent Terra, Unit Manager Grady, and Security Captain Young "allow[ed] their subordinates to often operate outside of policy."[109] Although a supervisor cannot encourage constitutional violations, a supervisor "has [no] affirmative constitutional duty to supervise and discipline so as to prevent violations of constitutional rights by his or her subordinates."[110] So alleging superiors "allowed" the unconstitutional practices of their subordinates is not sufficient to impose supervisor liability.[111]

We dismiss Mr. Batchelor's Eighth Amendment claims against Superintendent Terra, Unit Manager Grady, and Security Captain Young without prejudice if he can amend in good faith to show facts to support a finding of supervisory liability.

15

**D.  Mr. Batchelor does not plead a Fourteenth Amendment substantive due process claim.**

Mr. Batchelor sues "all named defendants" under the Due Process Clause of the Fourteenth Amendment.  We dismiss Mr. Batchelor's Fourteenth Amendment claim against Lieutenant Spagnoletti under the "more specific provision" rule because his excessive force claim is properly addressed by the Eighth Amendment.  We dismiss Mr. Batchelor's Fourteenth Amendment claims against Superintendent Terra, Unit Manager Grady, and Security Captain Young because he does not allege facts to support their supervisory liability.

**1.  Mr. Batchelor does not plead a Fourteenth Amendment claim against Lieutenant Spagnoletti.**

Mr. Batchelor claims Lieutenant Spagnoletti violated his rights to due process and freedom from discrimination when he used unauthorized force against Mr. Batchelor "in furtherance of a retalitory [sic] campaign of harassment."[112]

Under the Due Process Clause of the Fourteenth Amendment, no State shall "deprive any person of life, liberty, or property, without due process of law[.]"[113]  The Fourteenth Amendment's Due Process clause protects both substantive and procedural due process rights.[114]  The relevant inquiry in determining whether government conduct violates substantive due process "is whether the behavior of the government officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."[115]  Mr. Batchelor must establish "the loss of a protected property interest without adequate process" to succeed on a Fourteenth Amendment procedural due process claim.[116]  We must determine whether a correctional officer's use of oleoresin capsicum spray on an incarcerated individual can "shock the contemporary conscience."[117]

The conduct Mr. Batchelor alleges in support of his Fourteenth Amendment claim against Lieutenant Spagnoletti is based on the same conduct he alleges in support of his Eighth Amendment claim against Lieutenant Spagnoletti which can proceed. The "more specific provision" rule provides "if a constitutional claim is covered by a specific constitutional provision . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."[118] "The Third Circuit has expressly adopted this rule for cases involving Fourteenth Amendment substantive due process claims brought in combination with claims of other constitutional violations that challenge the same conduct."[119] Because Mr. Batchelor's Fourteenth Amendment claim against Lieutenant Spagnoletti falls within the scope of the Eighth Amendment, the "more specific provision" rule prohibits Mr. Batchelor from bringing a more generalized substantive due process claim under the Fourteenth Amendment.[120]

We dismiss Mr. Batchelor's Fourteenth Amendment claim against Lieutenant Spagnoletti with prejudice because amendment would be futile.

### 2. Mr. Batchelor does not plead Fourteenth Amendment claims against Superintendent Terra, Unit Manager Grady, or Security Captain Young.

Mr. Batchelor again asserts a supervisory liability theory when he claims Superintendent Terra, Unit Manager Grady, and Security Captain Young violated his due process rights under the Fourteenth Amendment "by continuing a unwritten [sic] custom of covering up staff abuses" which contributed to abuse and resulted in harm to Mr. Batchelor.[121]

Mr. Batchelor attempts to state a Fourteenth Amendment claim against these alleged supervisors under the second theory of supervisory liability by arguing they sustained an unwritten custom of covering up staff abuses with "deliberate indifference to the consequences," which directly caused constitutional harm to Mr. Batchelor.[122] Mr. Batchelor's claim fails under

the second theory because he does not identify a specific policy, practice, or custom resulting in a violation of his constitutional rights nor Superintendent Terra, Unit Manager Grady, or Security Captain Young's knowledge of the policy, practice, or custom.[123]

We dismiss Mr. Batchelor's Fourteenth Amendment claims against Superintendent Terra, Unit Manager Grady, and Security Captain Young without prejudice to Mr. Batchelor pleading facts to support a finding of supervisory liability.

### E.  Mr. Batchelor pleads assault and battery claims against Lieutenant Spagnoletti.

Mr. Batchelor sues Lieutenant Spagnoletti for assault and battery for using the oleoresin capsicum spray on him on January 25, 2024.

We look to Pennsylvania state law to determine whether Mr. Batchelor pleads a state law tort claim for assault or battery.[124] "Assault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person."[125] "Under Pennsylvania law, a claim for excessive force by an officer is a claim for assault and battery."[126] In *Moore v. Rosa*, Judge McHugh considered a pre-trial detainees' Pennsylvania state law claims for assault and battery related to a pepper spray incident.[127] Judge McHugh declined to dismiss the state law claims because those claims had been based on the same facts which supported the pre-trial detainee's excessive force claim related to the pepper spraying incident.[128]

Like the pre-trial detainee in *Moore*, the facts supporting Mr. Batchelor's state law claims for assault and battery are the same facts as those supporting his Eighth Amendment excessive force claim against Lieutenant Spagnoletti. We found those facts sufficient to state an excessive force claim, so we will allow his assault and battery claims to proceed against Lieutenant Spagnoletti.

**F.  We dismiss Mr. Batchelor's civil conspiracy claim.**

Mr. Batchelor seeks damages for a civil conspiracy against Superintendent Terra, Unit Manager Grady, and Security Captain Young alleging they "entered a conspiracy through actions of covering up staff abuse through circumventive investigations and even maliciously falsified dispositions/reports so staff such as Spagnoletti aren't penalized for their unethical violations of law and policy at SCI Phoenix."[129] Mr. Batchelor claims they all pursued "a continuing conspiracy to undermine inmate recourse for abuse suffered."[130]

To prevail on a civil conspiracy claim under section 1983, Mr. Batchelor must show: (1) the existence of a conspiracy involving state action; and (2) a deprivation of civil rights—here, his substantive due process rights under the Fourteenth Amendment.[131] The essence of a conspiracy is "an agreement or concerted action between individuals."[132] Mr. Batchelor "must allege with particularity and present material facts which show that the purported conspirators reached some understanding or agreement or plotted, planned and conspired together to deprive [him] of a protected federal right . . . [Mr. Batchelor] cannot rely on subjective suspicions and unsupported speculation."[133]

Mr. Batchelor's "allegations of a conspiracy must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action."[134] The elements of a claim of conspiracy to violate federal civil rights are: "(1) two or more persons conspire to deprive any person of [constitutional rights]; (2) one or more of the conspirators performs . . . any overt act in furtherance of the conspiracy; and (3) that overt act injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a citizen of the United States," with the added gloss under section 1983 "the conspirators act 'under the color of state

law.'"[135] And we are mindful "[a] conspiracy claim cannot be based merely on suspicion or speculation."[136]

Mr. Batchelor does not plead the first element of a civil conspiracy claim. He pleads no facts alleging Superintendent Terra, Unit Manager Grady, and Security Captain Young conspired to deprive him of his constitutional rights. Mr. Batchelor alleges Superintendent Terra, Unit Manager Grady, and Security Captain Young engaged in a "continuing conspiracy to undermine inmate recourse for abuse suffered."[137] He does not allege any of them communicated with one another and agreed to harm him. Mr. Batchelor must plead "an agreement or understanding between the defendants to carry out the alleged chain of events; his mere assertion that such a plot exists is simply not sufficient. Establishing the existence of an agreement is part of the *prima facie* case for civil conspiracy under 42 U.S.C. § 1983[.]"[138]

We dismiss Mr. Batchelor's civil conspiracy claim without prejudice if he can amend in good faith to show facts of an agreement between the state actors to violate his constitutional rights.

## II. Conclusion

Mr. Batchelor sues Superintendent Terra, Unit Manager Grady, Security Captain Young, and Lieutenant Spagnoletti in their individual and official capacities alleging they violated his constitutional rights. We dismiss Mr. Batchelor's official capacity claims seeking monetary damages with prejudice because Department of Corrections employees are immune from suit under the Eleventh Amendment. We dismiss Mr. Batchelor's claims for injunctive and declaratory relief based on past conduct.

We allow Mr. Batchelor to proceed with his First Amendment retaliation claim against Lieutenant Spagnoletti. We allow Mr. Batchelor to proceed with his Eighth Amendment claim

against Lieutenant Spagnoletti for spraying him with oleoresin capsicum, along with his state law claims for assault and battery. We dismiss without prejudice Mr. Batchelor's Eighth Amendment claims against Superintendent Terra, Unit Manager Grady, and Security Captain Young under a supervisory liability theory.

We dismiss with prejudice Mr. Batchelor's Fourteenth Amendment claim against Lieutenant Spagnoletti under the "more specific provision" rule.  We dismiss without prejudice Mr. Batchelor's Fourteenth Amendment claims against Superintendent Terra, Unit Manager Grady, and Security Captain Young because he does not allege facts to support a theory of supervisory liability.  We dismiss without prejudice Mr. Batchelor's civil conspiracy claim against Superintendent Terra, Unit Manager Grady, and Security Captain Young.

---

[1] ECF No. 1 ¶ 3.

[2] *Id.* ¶¶ 10, 33, 44.

[3] *Id.* ¶¶ 11, 17.

[4] *Id.* ¶ 17.

[5] *Id.*

[6] *Id.* ¶ 18.

[7] *Id.* Mr. Batchelor claims the unnamed correctional officer who opened Mr. Batchelor's cell door without restraining him breached the Department's security measures warranting an investigation by SCI Phoenix's Security Department headed by Captain Young. *Id.* ¶ 20.

[8] *Id.* ¶ 19.

[9] *Id.*

[10] *Id.* ¶ 12.

---

[11] *Id.* ¶ 21.

[12] *Id.* ¶ 12. Mr. Batchelor claims Lieutenant Spagnoletti's use of the oleoresin capsicum spray violated the Department's written use-of-force policy which requires correctional officers use the least amount of force necessary on incarcerated persons to gain compliance with their orders and discontinue force as soon as the incarcerated person complies with orders or the threat ceases. *Id.* ¶¶ 13–14. The Department provides in its policy force should only be used to restore order and not as a means of retaliation or harassment. *Id.* ¶ 15.

[13] *Id.* ¶ 21.

[14] *Id.* ¶ 28.

[15] *Id.* ¶¶ 29–31.

[16] *Id.* at 13.

[17] *Id.*

[18] *Id.*

[19] *Id.* at 14.

[20] *Id.*

[21] *Id.*

[22] *Id.* Mr. Kemper reports Mr. Batchelor is the fourth person he has "seen get violated" in the restricting housing unit. *Id.* at 13. Mr. Hammond states correctional officers assault inmates "and simply blame it on the victimized inmate each time." *Id.*

[23] *Id.* ¶¶ 13–14.

[24] *Id.* at 13.

[25] *Id.*

[26] *Id.* at 14.

[27] *Id.*

[28] *Id.* ¶ 22.

[29] *Id.*

[30] *Id.* Mr. Batchelor claims the Department's policies require its internal security department investigate as soon as it is aware of an incarcerated person's abuse allegations. *Id.* ¶ 23.

[31] *Id.* ¶ 24.

[32] *Id.* ¶ 48.

[33] *Id.* ¶ 9.

[34] *Id.* ¶¶ 32–52.

[35] *Id.* ¶ 10.

[36] *Id.* ¶ 44.

[37] *Id.* ¶¶ 39, 40, 45.

[38] *Id.* at 10–11, ¶¶ A–H.

[39] *Shane v. Fauver*, 213 F.3d 113, 116 n.2 (3d Cir. 2000).

[40] 28 U.S.C. § 1915A(a).

[41] *Id.* § 1915A(b)(1).

[42] *Turner v. Dist. Att'y Philadelphia Cnty.,* No. 22-0491, 2022 WL 1568395, at *3 (E.D. Pa. May 18, 2022).

[43] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotations omitted).

[44] *Elansari v. Univ. of Pennsylvania*, 779 F. App'x 1006, 1008 (3d Cir. 2019).

[45] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) and citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013)) (internal quotations omitted).

[46] *Yogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (quoting *Mala*, 704 F.3d at 244).

[47] *Id.* (quoting *Mala*, 704 F.3d at 245) (italics added).

[48] Congress provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges or immunities secured by the Constitution

and law, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.

[49] *West v. Atkins*, 487 U.S. 42, 48 (1988).

[50] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see Dooley*, 957 F.3d at 374 ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'") (quoting *Rode*, 845 F.2d at 1207)); *see also Iqbal*, 556 U.S. at 676 (explaining "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

[51] *McDuffie v. Varner*, No. 21-0161, 2021 WL 2206301, at *3 (E.D. Pa. June 1, 2021).

[52] *Id.*

[53] *Graves v. Gamble*, No. 21-344, 2023 WL 3741999, at *3 (W.D. Pa. Apr. 10, 2023), *report and recommendation adopte*d, 2023 WL 3740783 (W.D. Pa. May 31, 2023) (quoting *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989)).

[54] *Id.* (quoting *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 506 (3d Cir. 2001)).

[55] *Id.* (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002)).

[56] *Yaw v. Delaware River Basin Comm'n*, 49 F.4th 302, 318–19 (3d Cir. 2022) (citation omitted).

[57] *Id.* at 319 (citation omitted) (emphasis in original).

[58] ECF No. 1 at 10, ¶ G.

[59] *Id.*, ¶ C.

[60] *See Taggart v. Saltz*, 855 F. App'x 812, 815 (3d Cir. 2021) ("[D]eclaratory judgment is available to define the legal rights of parties, not to adjudicate past conduct where there is no threat of continuing harm."); *Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) ("Declaratory judgment is inappropriate solely to adjudicate past conduct.").

[61] ECF No. 1 at 10, ¶ G.

[62] *See Martin v. Keitel*, 205 F. App'x 925, 928–29 (3d Cir. 2006) (reasoning request for injunctive relief is "legally deficient" because it is "targeted at potential conduct that bears no relation to [plaintiff's] underlying claim").

[63] *Fantone v. Latini*, 780 F.3d 184, 186 (3d Cir. 2015).

[64] ECF No. 1 ¶ 12.

[65] *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019).

[66] *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *see also Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Coit v. Garman*, 812 F. App'x 83, 86 (3d Cir. 2020).

[67] *Mearin v. Vidonish*, 450 F. App'x 100, 102 (3d Cir. 2011).

[68] *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298 (3d Cir. 2016).

[69] ECF No. 1 ¶ 10.

[70] *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000) (explaining whether the incarcerated individual met the second element depends on "the facts of the particular case").

[71] *Newmones v. Ransom*, No. 21-276, 2022 WL 4536296, at *5 (W.D. Pa. Sept. 28, 2022) (quoting *Allah*, 229 F.3d at 225)).

[72] *Id.*

[73] *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000) (citing *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)).

[74] *Jones v. Sorbu*, No. 20-5270, 2021 WL 398494, at *8 (E.D. Pa. Feb. 4, 2021).

[75] *McKinney v. Ryan*, No. 19-12302, 2022 WL 1308368, at *5 (D.N.J. May 2, 2022) (quoting *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016)).

[76] ECF No. 1 ¶ 17.

[77] *Id.* ¶¶ 17, 33, 44.

[78] *Id.* at 14.

[79] *Hudson v. McMillian*, 503 U.S. 1, 5 (1992).

[80] *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson*, 503 U.S. at 7).

[81] *Id.* at 39.

[82] *Gibson v. Flemming*, 837 F. App'x 860, 862 (3d Cir. 2020) (quoting *Hudson*, 503 U.S. at 8).

[83] *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 303 (1991)) (quotations omitted).

[84] *Ricks v. Shover*, 891 F.3d 468, 480 (3d Cir. 2018) (quoting *Smith v. Mensinger*, 293 F.3d 641, 649 (3d Cir. 2002)).

[85] *Gibson*, 837 F. App'x at 862.

[86] *Drumgo v. Radcliff*, 661 F. App'x 758, 760 (3d Cir. 2016).

[87] *Id.* at 760–61.

[88] ECF No. 1 ¶ 12.

[89] *Id.* at 13–14.

[90] *Id.*

[91] *Id.* ¶ 21.

[92] *Id.* ¶ 39.

[93] *Id.* ¶¶ 26–27, 39–40.

[94] *Nottingham v. Shapiro*, No. 21-396, 2021 WL 9166614, at *4 (M.D. Pa. Oct. 5, 2021), *report and recommendation adopted*, 2021 WL 9166613 (M.D. Pa. Nov. 19, 2021), *aff'd sub nom. Nottingham v. Att'y Gen. Pennsylvania*, No. 21-3298, 2021 WL 9166614 (3d Cir. July 27, 2022).

[95] *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015).

[96] *Banegas v. Hampton*, No. 8-5348, 2009 WL 1098845, at *4 (E.D. Pa. Apr. 22, 2009).

[97] *Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020).

[98] *Castillo v. All Jane/John Does of Deputized Postal Officers at All Facilities Plaintiff Was Incarcerated*, No. 15-00910, 2016 WL 6089853, at *9 (M.D. Pa. Sept. 20, 2016), *report and recommendation adopted*, 2016 WL 6090729 (M.D. Pa. Oct. 17, 2016) (internal citations omitted).

[99] *Bornstein v. Cnty. of Monmouth*, No. 11-5336, 2014 WL 6908925, at *2 (D.N.J. Dec. 9, 2014) (quoting *Broadwater v. Fow*, 945 F. Supp. 2d 574, 588 (M.D. Pa. 2013)).

[100] *Saisi*, 822 F. App'x at 47–49.

[101] *Id.* at 48.

[102] *Id.*

[103] *Id.*

[104] *Banegas*, 2009 WL 1098845, at *6 (internal citations omitted).

[105] *Whitfield v. City of Philadelphia*, 587 F. Supp. 2d 657, 666 (E.D. Pa. 2008).

[106] ECF No. 1 ¶¶ 25–26.

[107] *See Brown v. Delaware Cnty. Prison Bd. of Inspectors*, 741 F. App'x 135, 138 (3d Cir. 2018) ("Brown's vague and conclusory allegation that the defendants had a policy or custom of 'fail[ing] to provide an adequate level of security staffing,' is insufficient to state a claim.").

[108] *Barkes*, 766 F.3d at 316.

[109] ECF No. 1 ¶ 26.

[110] *Mack v. Clark*, No. 21-0004, 2022 WL 2669510, at *5 (W.D. Pa. July 11, 2022) (quoting *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986)).

[111] *Washington v. Wolf*, No. 16-1714, 2017 WL 9487089, at *5 (W.D. Pa. Oct. 26, 2017), *report and recommendation adopted as modified*, 2017 WL 5589089 (W.D. Pa. Nov. 21, 2017).

[112] ECF No. 1 ¶ 44.

[113] U.S. Const. amend. XIV.

[114] *United States v. Salerno*, 481 U.S. 739, 746 (1987).

[115] *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 425 (3d Cir. 2006) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)).

[116] *Sherrill v. City of Hoboken*, No. 20-1251, 2021 WL 4473392, at *1 (3d Cir. Sept. 30, 2021) (citing *Schmidt v. Creedon*, 639 F.3d 587, 595 (3d Cir. 2011)).

[117] *Kaucher*, 455 F.3d at 425.

[118] *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997).

[119] *Campbell v. Julian*, No. 23-1225, 2024 WL 714919, at *6 (M.D. Pa. Jan. 25, 2024), *report and recommendation adopted*, 2024 WL 710891 (M.D. Pa. Feb. 21, 2024) (citing *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 261 (3d Cir. 2010)).

[120] *See Jackson v. Dep't of Corr.*, No. 22-1430, 2023 U.S. Dist. LEXIS 149650, at *7 (W.D. Pa. Aug. 23, 2023) ("The explicit source rule precludes a claim under the Fourteenth Amendment where the claim is covered by a specific constitutional provision. Because Plaintiffs excessive force claim arises under the Eighth Amendment, the explicit source rule prohibits a similar claim under the more generalized notion of substantive due process contained in the Fourteenth Amendment."); *Bloom v. Doe 1*, No. 22-0022, 2023 WL 6812020, at *3 (W.D. Pa. Sept. 12, 2023), *report and recommendation adopted*, 2023 WL 6810853 (W.D. Pa. Oct. 16, 2023) ("Because the Eighth Amendment specially addresses his excessive force allegation, Bloom's Fourteenth Amendment substantive due process claim should be dismissed with prejudice."); *Burk v. Taylor*, No. 22-4747, 2023 WL 8237248, at *3 (E.D. Pa. Nov. 28, 2023) (dismissing

Fourteenth Amendment claim under the "more specific provision" rule reasoning the Eighth Amendment explicitly provides constitutional protection to incarcerated persons).

[121] ECF No. 1 ¶ 45.

[122] *Barkes*, 766 F.3d at 316.

[123] *Brown*, 741 F. App'x at 138 ("Brown's vague and conclusory allegation that the defendants had a policy or custom of 'fail[ing] to provide an adequate level of security staffing,' is insufficient to state a claim.").

[124] *Moore v. Rosa*, No. 21-0933, 2021 WL 1143376, at *4 (E.D. Pa. Mar. 25, 2021).

[125] *Id.* (quoting *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994)).

[126] *Burke v. Barr*, No. 22-3464, 2024 WL 750572, at *4 (E.D. Pa. Feb. 23, 2024).

[127] *Moore*, 2021 WL 1143376.

[128] *Id.* at *4.

[129] ECF No. 1 ¶ 48.

[130] *Id.* ¶ 49.

[131] *Frompovicz v. Hissner*, 434 F. Supp. 3d 269, 283 (E.D. Pa. 2020), *aff'd*, 843 F. App'x 427 (3d Cir. 2021) (quoting *Rosembert v. Borough of E. Lansdowne*, 14 F. Supp. 3d 631, 647 (E.D. Pa. 2014)).

[132] *Savage v. Judge*, 644 F. Sup. 2d 550, 561 (E.D. Pa. 2009) (citing *Wilkins v. Bittenbender*, No. 4-2397, 2006 WL 860140, *18–19 (M.D. Pa. Mar. 31, 2006)).

[133] *Id.* (citing *Wilkins*, 2006 WL 860140, *18–19).

[134] *Langella v. Cercone*, No. 09-312, 2010 WL 2402971, at *4 (W.D. Pa. June 10, 2010) (quoting *Capogrosso v. The Supreme Court of N.J.*, 588 F.3d 180, 185 (3d Cir. 2009)).

[135] *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 294 n.15 (3d Cir. 2018) (quoting *Barnes Found. v. Twp. of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001) (quoting 42 U.S.C. § 1983)).

[136] *Blessing v. City of Latrobe*, No. 20-1212, 2022 WL 114077, at *9 (W.D. Pa. Jan. 12, 2022) (citing *Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991)).

[137] ECF No. 1 ¶ 49.

[138] *Kist v. Fatula*, No. 06-0067, 2007 WL 2404721, at *8 (W.D. Pa. Aug. 17, 2007).