## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEFAN BATCHELOR | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 24-1258 |
| | : | |
| LIEUTENANT SPAGNOLETTI, SUPERINTENDENT J. TERRA, UNIT MANAGER S. GRADY, CAPTAIN YOUNG | : : : : | |

## **MEMORANDUM**

**KEARNEY, J.**                                                                                          **June 27, 2024**

      Correctional officers daily balance the need to maintain order in our correctional facilities with an incarcerated person's constitutional rights. The incarcerated person may file internal complaints and seek redress from the persons we trust to supervise their incarceration. We recognize the difficulty in setting bright lines for correctional officers and incarcerated persons. We today review an incarcerated person's second try at pleading civil rights claims arising from officers allegedly holding him down and spraying him with chemical agent oleoresin capsicum or "OC Spray" six months ago. The incarcerated person pleads details of his earlier complaints. He claims the officers retaliated against him. He also specifically pleads officers asked incarcerated witnesses to implore him to not complain of the spraying. The incarcerated person pleads claims against Lieutenant Spagnoletti for First Amendment retaliation, Eighth Amendment excessive force, and common law assault and battery. He also pleads Eighth Amendment deliberate indifference claims against Superintendent Terra, Unit Manager Grady, and Security Captain Young based on allegations of their knowledge of and participation in the alleged excessive force. We dismiss his equal protection and civil conspiracy claims without prejudice.

I.   **Alleged pro se facts**

The Commonwealth presently detains Stefan Batchelor at State Correctional Institution Phoenix.[1] SCI Phoenix officials placed Mr. Batchelor in the restricted housing unit.[2] Mr. Batchelor used SCI Phoenix's internal complaint system at unspecified times before January 25, 2024 to report correctional officers, including Lieutenant Spagnoletti, for civil rights violations including excessive force against incarcerated persons in the restricted housing unit.[3]

### *The January 25, 2024 conduct*

Lieutenant Spagnoletti approached Mr. Batchelor on the morning of January 25, 2024.[4] Lieutenant Spagnoletti "openly and verbally expressed his dislike" for Mr. Batchelor as he had on earlier occasions.[5] Lieutenant Spagnoletti told Mr. Batchelor, "Your [sic] always complaining" and "I can't wait until someone kicks your ass or staff is given a chance to shut your f—ing mouth."[6]

An unnamed correctional officer opened Mr. Batchelor's cell door in the restricted housing unit around lunch time on January 25, 2024.[7] The unnamed officer acted "outside of department policies" by not strip-searching and then restraining Mr. Batchelor before opening his cell door in the restricted housing unit.[8]

Staff assigned to the restricted housing unit "routinely seek unethical retribution against inmates, such as [Mr. Batchelor], who are disliked for filing paperwork, by orchastrating [sic] circumstances" where they open cell doors without first restraining incarcerated persons.[9] Correctional officers do this to provoke the unrestrained incarcerated persons "so the use of force can be justified; if the inmate reacts to 'bait.'"[10]

After an unnamed officer opened his cell door midday on January 25, 2024, non-party officers then restrained Mr. Batchelor by handcuffing him behind his back while Mr. Batchelor

laid on his stomach.[11] Mr. Batchelor did not resist the four or five officers. Several unnamed officers pinned Mr. Batchelor to the ground.[12] Lieutenant Spagnoletti "mercilessly sprayed [Mr. Batchelor] in the face with a chemical agent [oleoresin capsicum or 'OC Spray'] . . . until the container was empty."[13]

Mr. Batchelor required medical attention for injuries from "the weight of several officers who were pinning [him] to the ground and restricting his ability to breath [sic] regularly" and the effects of the oleoresin capsicum spray which triggered Mr. Batchelor's asthma.[14] Mr. Batchelor has since developed problems with his vision in his right eye.[15] Mr. Batchelor suffers blurred and double-vision in his right eye "causing frequent headaches."[16] He suffers "intense anxiety and paranoia as he is constantly on high alert; fearing for his safety and from the potential for additional abuse."[17] Mr. Batchelor also suffers loss of sleep, increased frustration, denial of re-entry services, and the potential for an extended housing assignment in the Intensive Management Unit.[18]

### *Persons witnessed the January 25, 2024 incident.*

The incarcerated Richard Kemper, Khalil Hammond, and Montana Bell witnessed the January 25, 2024 incident with Mr. Batchelor. They swear they witnessed Lieutenant Spagnoletti spray the oleoresin capsicum on the restrained, compliant, and unresisting Mr. Batchelor.[19] Mr. Hammond heard Lieutenant Spagnoletti tell Mr. Batchelor "something to the effect of 'how's that, you asshole.'"[20] Mr. Hammond also heard "Lieutenant Spagnoletti make threats to assault [Mr.] Batchelor that same day and on other occasions, at which times he called Batchelor a snitch for filing paperwork against him."[21]

### *Correctional officers try to silence Mr. Batchelor.*

Messrs. Hammond, Kemper, and Bell swear other correctional officers asked them to talk to Mr. Batchelor.[22] On the same day as the spraying incident, an unnamed correctional officer

3

asked Mr. Kemper to "try to talk to [Mr. Batchelor] so he don't get attention down here."[23] Mr. Kemper responded, "Whatever attention is bought [sic] would be good. So this won't keep happening again. And again. And again to other prisoners."[24] Mr. Hammond swears on February 1, 2024, an unnamed officer attempted to offer him e-cigarettes if he asked Mr. Batchelor to drop his complaints regarding the incident.[25] Mr. Hammond declined the offer.[26] Mr. Bell swears officers spoke to him over his intercom requesting he speak to Mr. Batchelor regarding the incident in exchange for extra meals at lunch.[27] Mr. Bell declined the offer.

### *Mr. Batchelor reports the spraying incident.*

Mr. Batchelor contacted the Department's abuse hotline on February 14, February 15, and February 22, 2024.[28] Mr. Batchelor wrote to Superintendent Joseph Terra, Security Captain Young, and the Intensive Management Unit Manager Grady describing his complaint.[29] He personally spoke to Unit Manager Grady and medical personnel during medication rounds.[30] The Facility operates with policy requiring its internal security department investigate "once an allegation of abuse is initiated" by "making staff aware of said abuse."[31] The Security Department headed by Captain Young ignored Mr. Batchelor's abuse allegations and did not conduct an investigation.[32] Superintendent Terra, Unit Manager Grady, and Security Captain Young instead "falsif[ied] reports and penalize[ed] the victimized inmate."[33] The January 25, 2024 incident "is only one of many incidents" when staff abused Mr. Batchelor.[34] Superintendent Terra, Unit Manager Grady, and Security Captain Young are aware of these other incidents.[35]

II.   Analysis

Mr. Batchelor sued Lieutenant Spagnoletti, Superintendent Terra, Security Captain Young, and Unit Manager Grady three months ago claiming they violated, and conspired to violate, his First, Eighth, and Fourteenth Amendment rights, and for assault and battery. Mr. Batchelor seeks

4

compensatory damages, punitive damages, declaratory relief, injunctive relief, costs, and attorney's fees. We granted him leave to proceed *in forma pauperis* and screened his allegations under 28 U.S.C. § 1915(e)(2)(B).

We allowed Mr. Batchelor to proceed with his claims against Lieutenant Spagnoletti for First Amendment retaliation, Eighth Amendment excessive force, and common law assault and battery. We dismissed Mr. Batchelor's official capacity claims seeking monetary damages with prejudice as Department of Corrections employees are immune from suit under the Eleventh Amendment. We dismissed Mr. Batchelor's Fourteenth Amendment due process claim against Lieutenant Spagnoletti with prejudice because amendment would be futile. We dismissed without prejudice Mr. Batchelor's claims against Superintendent Terra, Unit Manager Grady, and Security Captain Young for Eighth Amendment deliberate indifference, Fourteenth Amendment substantive due process, and state law civil conspiracy. We granted Mr. Batchelor leave to amend to sue Superintendent Terra, Unit Manager Grady, and Security Captain Young under the Eighth and Fourteenth Amendments if he could plead facts to support a theory of supervisory liability. We granted Mr. Batchelor leave to amend to sue Superintendent Terra, Unit Manager Grady, and Security Captain Young for civil conspiracy if he can plead the existence of an agreement or understanding.

Mr. Batchelor timely amended his earlier-dismissed Complaint under the leave we granted him a month ago. He again attempts to plead claims against Superintendent Terra, Unit Manager Grady, and Security Captain Young for violations of the Eighth Amendment and state law civil conspiracy. Mr. Batchelor drops his Fourteenth Amendment due process claims but adds a new claim. He now sues Lieutenant Spagnoletti, Superintendent Terra, Unit Manager Grady, and Security Captain Young under the Fourteenth Amendment's equal protection clause.

Congress requires we again screen the incarcerated Mr. Batchelor's amended Complaint and dismiss if he cannot state a claim. We must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief can be granted."[36] We apply the same standard used under Federal Rule of Civil Procedure 12(b)(6) when considering whether to dismiss a complaint for failure to state a claim under section 1915A(b)(1).[37] A complaint containing "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" satisfies the standard under Rule 12(b)(6).[38] We must accept all of Mr. Batchelor's factual allegations as true, construe facts in the light most favorable to him, and determine whether he states a plausible claim for relief.[39]

Mr. Batchelor argues the correctional officers violated his rights under the Eighth and Fourteenth Amendments. Congress, in section 1983, allows persons with constitutional claims to seek relief in federal court.[40] Mr. Batchelor must allege a violation "of a right secured by the Constitution and laws of the United States" by "a person acting under color of state law" to state a claim under section 1983.[41] "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.[42]

### A. Mr. Batchelor pleads Eighth Amendment deliberate indifference claims against Superintendent Terra, Unit Manager Grady, and Security Captain Young in their individual capacities.

Mr. Batchelor sues Superintendent Terra, Unit Manager Grady, and Security Captain Young for Eighth Amendment deliberate indifference. We dismissed Mr. Batchelor's Eighth Amendment claim because he did not allege facts to support supervisory liability. Mr. Batchelor cures his pleading defects by now alleging details about the supervisors' knowledge of previous incidents of excessive force and their participation in covering up abuses.

We recognize two theories of supervisory liability for violating civil rights as described to

Mr. Batchelor in our April 17, 2023 Memorandum.[43] Supervisors may face liability for unconstitutional acts undertaken by subordinates when: (1) they participated in violating an individual's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct, making the supervisor personally liable under section 1983; or (2) the supervisor created and upheld a policy, practice, or custom with "deliberate indifference to the consequences," which directly caused the constitutional harm.[44]

Under the first theory, generalized allegations a supervisory state actor is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in the underlying constitutional violation.[45] To establish knowledge and acquiescence of a subordinate's misconduct, Mr. Batchelor must allege the supervisor's: "(1) contemporaneous knowledge of the offending incident or knowledge of similar incidents in the past, and (2) actions or inactions which communicated approval of the subordinate's behavior."[46]

We found Mr. Batchelor did not meet the pleading requirements because he did not plead facts showing Superintendent Terra, Unit Manager Grady, or Security Captain Young's knowledge or participation. Mr. Batchelor now cures his pleading defects under the first theory by adding details about their knowledge of previous incidents in the past and participation in covering up abuses.

We are guided by Judge Kane's reasoning in *Roberts v. Luther*.[47] The incarcerated Rahamon Roberts alleged correctional officers in the restricted housing unit repeatedly exposed him to excessive amounts of pepper spray triggering his asthma and causing damage to his nose and sinuses.[48] Mr. Roberts alleged he complained to Superintendent Luther and Restricted Housing Unit Manager Goss about the excessive use of oleoresin capsicum spray through

7

complaints and grievances. The state actors moved to dismiss his Eighth Amendment claims against Superintendent Luther and Unit Manager Goss for failure to plead supervisory liability. Judge Kane held Mr. Roberts stated a claim Superintendent Luther and Unit Manager Goss violated his Eighth Amendment rights by "failing to take action to curb the excessive use of [oleoresin capsicum] spray despite being placed on notice of such behavior."[49] Judge Kane reasoned, "Several courts have concluded that a supervisory official may be held liable in connection with a review of grievances alleging an ongoing violation because the official is personally involved in that violation because he is confronted with a situation he can remedy directly."[50]

Mr. Batchelor pleads he complained to Superintendent Terra, Unit Manager Grady, and Security Captain Young about the January 25, 2024 incident and earlier similar incidents of retaliation by excessive force against Mr. Batchelor and others in the restricted housing unit. Mr. Batchelor pleads Superintendent Terra, Unit Manager Grady, and Security Captain Young communicated approval by failing to respond to or investigate Mr. Batchelor's complaints, falsifying reports, and even "penalizing the victimized inmate" once they learned of the abuses.[51] Mr. Batchelor pleads supervisory liability under the first theory.

To state a claim under the second theory, Mr. Batchelor must: "(1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or practice created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk, and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure."[52] Under a sub-category of the second theory, a supervisor may be liable for failure to train or supervise their

employees.[53] "[T]he plaintiff must identify specific acts or omissions of the supervisor that evidence deliberate indifference and persuade the court that there is a relationship between the identified deficiency and the ultimate injury."[54]

We dismissed Mr. Batchelor's claim under the second theory because he did not identify a policy, practice, or custom and did not plead the supervisors' knowledge. Mr. Batchelor cures his pleading defects by identifying a specific practice of allowing excessive force by corrections officers against incarcerated persons in the restricted housing unit to go unpunished. Mr. Batchelor pleads knowledge by alleging Superintendent Terra, Unit Manager Grady, and Security Captain Young knew of earlier similar incidents of retaliation by excessive force against Mr. Batchelor and others in the restricted housing unit and took no action. He also identifies "specific acts or omissions of the supervisor that evidence deliberate indifference," including circumventing investigations into allegations of abuse, failing to train officers in the use of force, failing to discipline officers who engage in abuse, falsifying reports, and penalizing the victimized inmates.[55]

We are guided by Judge Jones III's reasoning in *Grayson v. DeWitt*.[56] The incarcerated Louis Grayson sued police officers for Fourth Amendment excessive force. Judge Jones III considered Mr. Grayson's claims for supervisory liability against two police chiefs who supervised the officers involved in the incident. Judge Jones III reasoned Mr. Grayson stated supervisory liability claims based on allegations the chiefs of police: "knew of specific prior incidents of possible excessive force and nonetheless failed to investigate citizens' complaints"; "failed to properly train and discipline officers in light of the prior incidents"; "did not follow up on [Mr. Grayson's] own complaint regarding the use of force"; and "created an environment where the risk of future violations could occur and did occur."[57]

Mr. Batchelor also pleads Superintendent Terra, Unit Manager Grady, and Security Captain Young knew of similar prior incidents of possible excessive force, did not investigate complaints, did not properly train correctional officers in the use of force, and created a "culture of abuse of inmates by staff in the [restricted housing unit], who fear no consequence for their actions[] due to a lack of reprimand."[58] Mr. Batchelor pleads supervisory liability under the second theory.

Mr. Batchelor sufficiently pleads supervisory liability for his Eighth Amendment deliberate indifference claims against Superintendent Terra, Unit Manager Grady, and Security Captain Young.

### B.  Mr. Batchelor does not plead Fourteenth Amendment equal protection claims against Lieutenant Spagnoletti, Superintendent Terra, Unit Manager Grady, or Security Captain Young.

Mr. Batchelor previously tried to plead a Fourteenth Amendment substantive due process claim against Superintendent Terra, Unit Manager Grady, and Security Captain Young. We dismissed because he did not allege facts to support supervisory liability. He now drops his due process claim and brings a Fourteenth Amendment equal protection claim against Lieutenant Spagnoletti, Superintendent Terra, Unit Manager Grady, and Security Captain Young. We dismiss for failure to state a claim.

Under the equal protection clause, no state shall "deny to any person within its jurisdiction the equal protection of the laws."[59] "Traditionally, establishing a prima facie case of discrimination under the Equal Protection Clause required plaintiffs to 'prove that they were members of a protected class.'"[60] An individual who is not a member of a protected class may bring a "class of one" equal protection claim.[61] Mr. Batchelor may state a "class of one" equal protection claim if

10

he alleges "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment."[62]

Mr. Batchelor brings a "class of one" equal protection claim. Mr. Batchelor alleges Lieutenant Spagnoletti singled him out for verbal and physical harassment and Superintendent Terra, Unit Manager Grady, and Security Captain Young "aided" in the harassment.[63] Mr. Batchelor alleges these state actors treated him differently than "most similarly situated persons (inmate)."[64]

Mr. Batchelor cannot state a claim based on these vague and conclusory allegations. Mr. Batchelor does not allege facts to identify "similarly situated" persons, why they are similarly situated, or how they were treated differently.[65] Nor does he allege they acted without a rational basis for any difference in his treatment. Even if Mr. Batchelor can plead these facts in good faith, he still must allege facts to support claims against Superintendent Terra, Unit Manager Grady, and Security Captain Young under a supervisory liability theory.

We dismiss Mr. Batchelor's Fourteenth Amendment equal protection claims without prejudice.

### C. Mr. Batchelor does not plead state law civil conspiracy claims against Superintendent Terra, Unit Manager Grady, or Security Captain Young.

Mr. Batchelor again sues Superintendent Terra, Unit Manager Grady, and Security Captain Young for state law civil conspiracy. Mr. Batchelor must plead (1) the existence of a conspiracy involving state action; and (2) a deprivation of civil rights.[66] The elements of a claim of conspiracy to violate federal civil rights are "(1) two or more persons conspire to deprive any person of [constitutional rights]; (2) one or more of the conspirators perform . . . any overt act in furtherance of the conspiracy; and (3) that overt act injures the plaintiff in his person or property or deprives

the plaintiff of any right or privilege of a citizen of the United States."[67] A conspiracy claim cannot consist of mere suspicion or speculation.[68] Mr. Batchelor must plead "an agreement or understanding between the defendants to carry out the alleged chain of events."[69]

We explained in our April 17, 2024 memorandum Mr. Batchelor did not plead a conspiracy claim because he did not plead the first element of a civil conspiracy claim. Mr. Batchelor still does not plead facts allowing us to plausibly infer Superintendent Terra, Unit Manager Grady, and Security Captain Young conspired to deprive him of his constitutional rights. Mr. Batchelor pleads no facts supporting his wholly conclusory allegation of an agreement or understanding. Mr. Batchelor also does not identify an overt act on the part of Superintendent Terra, Unit Manager Grady, and/or Security Captain Young.

Mr. Batchelor does not allege an agreement between Superintendent Terra, Unit Manager Grady, and Security Captain Young. We again dismiss the conspiracy claim. We will allow Mr. Batchelor to take discovery before he can again try to plead an agreement or understanding among these state actors.

### III. Conclusion

We allow Mr. Batchelor to proceed with his claims against Lieutenant Spagnoletti for First Amendment retaliation, Eighth Amendment excessive force, and common law assault and battery. We allow Mr. Batchelor to proceed on his Eighth Amendment deliberate indifference claims against Superintendent Terra, Unit Manager Grady, and Security Captain Young based on his new allegations of their knowledge of and participation in the alleged excessive force. We dismiss Mr. Batchelor's Fourteenth Amendment equal protection claim without prejudice. We dismiss Mr. Batchelor's civil conspiracy claim without prejudice because he again does not plead the existence of an understanding or agreement.

---

[1] ECF No. 16 ¶ 3.

[2] *Id.* ¶ 21.

[3] *Id.* ¶¶ 10, 19, 33.

[4] *Id.* ¶ 18.

[5] *Id.*

[6] *Id.*

[7] *Id.* ¶ 20.

[8] *Id.*

[9] *Id.* ¶ 21.

[10] *Id.*

[11] *Id.* ¶ 12–13.

[12] *Id.* ¶ 22.

[13] *Id.* ¶ 13. Mr. Batchelor claims Lieutenant Spagnoletti's use of the oleoresin capsicum spray violated the Department's written use-of-force policy which requires correctional officers use the least amount of force necessary on incarcerated persons to gain compliance with their orders and discontinue force as soon as the incarcerated person complies with orders or the threat ceases. *Id.* ¶¶ 14–15. The Department provides in its policy force should only be used to restore order and not as a means of retaliation or harassment. *Id.* ¶ 16.

[14] *Id.* ¶ 22.

[15] *Id.* ¶ 36.

[16] *Id.* ¶¶ 36–37.

[17] *Id.* ¶ 38.

[18] *Id.* ¶ 39–40. The Amended Complaint uses the terms "IMU" and "RHU" interchangeably to refer to the portion of restricted housing unit in which SCI Phoenix placed Mr. Batchelor and where the events of the alleged incident occurred. The distinction is unclear.

[19] *Id.* at 17–19.

---

[20] *Id.* at 17.

[21] *Id.*

[22] *Id.* at 17–19.

[23] *Id.* at 18.

[24] *Id.*

[25] *Id.* at 17.

[26] *Id.*

[27] *Id.* at 19.

[28] *Id.* ¶ 25.

[29] *Id.*

[30] *Id.*

[31] *Id.* ¶ 23.

[32] *Id.* ¶ 26.

[33] *Id.* ¶ 49.

[34] *Id.* ¶ 32.

[35] *Id.* ¶ 33.

[36] 28 U.S.C. § 1915A(b)(1).

[37] *Turner v. Dist. Att'y Philadelphia Cnty.,* No. 22-0491, 2022 WL 1568395, at *3 (E.D. Pa. May 18, 2022).

[38] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotations omitted).

[39] *Elansari v. Univ. of Pennsylvania*, 779 F. App'x 1006, 1008 (3d Cir. 2019).

[40] 42 U.S.C. § 1983.

[41] *West v. Atkins,* 487 U.S. 42, 48 (1988).

[42] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

[43] *Nottingham v. Shapiro*, No. 21-396, 2021 WL 9166614, at *4 (M.D. Pa. Oct. 5, 2021), *report and recommendation adopted*, 2021 WL 9166613 (M.D. Pa. Nov. 19, 2021), *aff'd sub nom. Nottingham v. Att'y Gen. Pennsylvania*, No. 21-3298, 2021 WL 9166614 (3d Cir. July 27, 2022).

[44] *Barkes v. First Corr. Med. Inc.,* 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015).

[45] *Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020).

[46] *Castillo v. All Jane/John Does of Deputized Postal Officers at All Facilities Plaintiff Was Incarcerated*, No. 15-00910, 2016 WL 6089853, at *9 (M.D. Pa. Sept. 20, 2016), *report and recommendation adopted*, 2016 WL 6090729 (M.D. Pa. Oct. 17, 2016) (internal citations omitted).

[47] 2021 WL 5233318 (M.D. Pa. Nov. 10, 2021).

[48] *Id.* at *1–*2.

[49] *Id.* at *2.

[50] *Id.* at *5 (citations and quotations omitted).

[51] ECF No. 16 ¶ 49.

[52] *Banegas v. Hampton*, No. 08-5348, 2009 WL 1098845, at *6 (E.D. Pa. Apr. 22, 2009) (citations and quotations omitted).

[53] *Whitfield v. City of Philadelphia*, 587 F. Supp. 2d 657, 666 (E.D. Pa. 2008).

[54] *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001) (citations and quotations omitted).

[55] *Id.*

[56] *Grayson v. DeWitt*, No. 15-0453, 2016 WL 11605699 (M.D. Pa. Mar. 18, 2016).

[57] *Id.* at *8.

[58] ECF No. 16 ¶ 29.

[59] U.S. CONST. AMEND. XIV, § 1.

[60] *Pew v. Little*, No. 22-1488, 2024 WL 967823, at *4 (E.D. Pa. Mar. 6, 2024) (quoting *Oliveira v. Twp. of Irvington*, 41 F. App'x 555, 559 (3d Cir. 2002)).

---

[61] *Williams v. Sorber*, No. 23-3426, 2024 WL 263933, at *3 (E.D. Pa. Jan. 24, 2024).

[62] *Id.*

[63] ECF No. 16 ¶¶ 52–53.

[64] *Id.* ¶ 54.

[65] *See Zuber v. Sorber*, No. 22-3661, 2023 WL 3077807, at *7 (E.D. Pa. Apr. 21, 2023) (finding plaintiff did not plead a class of one equal protection claim because he made conclusory allegations of similarly situated incarcerated persons "but he [did] not allege any facts describing why they were similarly situated and how they were treated differently"); *Perano v. Twp. Of Tilden*, 423 F. App'x 234, 238 (3d Cir. 2011) ("At the motion to dismiss stage, Perano must allege facts sufficient to make plausible the existence of such similarly situated parties.").

[66] *Frompovicz v. Hissner*, 434 F. Supp, 3d 269, 283 (E.D. Pa. 2020), *aff'd*, 843 F. App'x 427 (3d Cir. 2021) (quoting *Rosembert v. Borough of E. Lansdowne*, 14 F. Supp. 3d 631, 647 (E.D. Pa. 2014)).

[67] *Jutrowski v. Twp. Of Riverdale*, 904 F.3d 280, 294 n.15 (3d Cir. 2018) (quoting *Barnes Found. v. Twp. of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001) (quoting 42 U.S.C. § 1983)).

[68] *Blessing v. City of Latrobe*, No. 20-1212, 2022 WL 114077, at *9 (W.D. Pa. Jan. 12, 2022) (citing *Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991)).

[69] *Kist v. Fatula*, No. 06-0067, 2007 WL 2404721, at *8 (W.D. Pa. Aug. 17, 2007).