IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEFAN BATCHELOR | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 24-1258 |
| | : | |
| LIEUTENANT SPAGNOLETTI, | : | |
| SUPERINTENDENT J. TERRA, UNIT | : | |
| MANAGER S. GRADY, CAPTAIN | : | |
| YOUNG | : | |

## MEMORANDUM

KEARNEY, J.                                                February 21, 2025

A correctional facility installed video cameras in the common areas adjacent to cells. Video footage, unless somehow altered, may offer compelling evidence of how correctional officers treat the incarcerated persons in the common area. We today address an incarcerated person's claim of excessive force and First Amendment retaliation after a correctional officer pepper sprayed him while other officers attempted to restrain him. The officers acted after the incarcerated person began hitting another incarcerated person in front of the cameras. The two men then fell to the ground in a struggle. The video tells the story. There is no basis to find the video is inaccurate. The officers faced a split second need to control two incarcerated persons fighting in the common area. At least two officers attempted to separate the men without success. Other officers then approached. One of the officers pepper sprayed the original attacker who immediately stopped his aggression, allowing the officers to restrain him and stop the fight.

We have no basis to find the Officers' conduct to be excessive or somehow retaliatory for the incarcerated person's First Amendment conduct. We grant the correctional officers' motion for summary judgment.

## I. Undisputed Facts

The Commonwealth detained Stefan Batchelor at SCI-Phoenix in January 2024.[1]

### *January 25, 2024 incident captured on video and in an incident report.*

The Commonwealth held Mr. Batchelor in an Intensive Management Unit at SCI-Phoenix on January 25, 2024.[2] An unpleaded person opened the door to Mr. Batchelor's cell for no pleaded reason at approximately 11:00 a.m. on January 25, 2024.[3] Mr. Batchelor left his cell minutes later and walked downstairs into a common area where another incarcerated man, Mr. Mayo, stood working at a kiosk.[4]

Mr. Batchelor approached Mr. Mayo from behind and repeatedly punched Mr. Mayo in the head at 11:10:48.[5] Messrs. Batchelor and Mayo then began to fight one another in the common area with both men falling to the floor.[6] Two officers responded to the fight at 11:10:56 and attempted to separate Mr. Batchelor and Mr. Mayo.[7] Mr. Batchelor and Mr. Mayo continued to fight one another; two additional officers arrived on the scene at 11:11:08, followed by Lieutenant Spagnoletti at 11:11:12, and three more officers at 11:11:13.[8] Messrs. Batchelor and Mayo continued to struggle with officers trying to separate them. Lieutenant Spagnoletti deployed a burst of pepper spray in Mr. Batchelor's face at 11:11:17 while the other officers struggled to wrestle Mr. Batchelor onto his stomach in an attempt to handcuff him.[9] Officers secured Mr. Batchelor's hands behind his back to handcuff him immediately after the pepper spray at 11:11:19. Officers pulled Mr. Batchelor to his feet less than a minute later at 11:12:45 and took him to the Facility's medical department where a nurse irrigated Mr. Batchelor's eyes.[10] The Facility's medical records show Mr. Batchelor made no other complaints and officers returned him to his cell.[11]

Lieutenant Spagnoletti completed an incident report for his Shift Commander Captain Cavalari.[12] Lieutenant Spagnoletti reported he responded to the fight, observed Mr. Batchelor and

Mr. Mayo continuing to fight on the floor as officers attempted to restrain them, Mr. Batchelor did not cooperate or comply with orders and continued to strike Mr. Mayo, and Lieutenant Spagnoletti deployed pepper spray at Mr. Batchelor at which time Mr. Batchelor complied with orders.[13]

The Facility issued a misconduct report to Mr. Batchelor for the January 25, 2024 incident.[14] Mr. Batchelor refused to attend a disciplinary hearing.[15] A Hearing Examiner reviewed the video of the incident and the report of Corrections Officer Fadden who witnessed the fight, found Mr. Batchelor guilty of refusing to obey an order during the fight with Mr. Mayo, and imposed sixty days of disciplinary custody and loss of job as discipline.[16]

### The record of Mr. Batchelor's grievances does not show he grieved the January 25, 2024 incident.

The Superintendent Assistant of SCI-Phoenix and Facility Grievance Coordinator Gina Orlando swore she reviewed the SCI-Phoenix grievance records for Mr. Batchelor as they relate to the claims in his amended Complaint.[17] Grievance Coordinator Orlando swore Mr. Batchelor did not submit a grievance on January 25, 2024, did not submit a grievance relating to his amended Complaint, and submitted only two grievances within fifteen working days of the January 25, 2024 incident as required by the Department of Corrections Administrative Policy DC-ADM 804.[18] The two grievances filed by Mr. Batchelor at Nos. 1072444 and 1072895 do not related to the January 25, 2024 pepper spray incident.[19]

Mr. Batchelor filed Grievance No. 1072444 on January 27, 2024 in which he complained about the failure of janitors to keep clean the block where he is housed.[20] Facility Grievance Coordinator Owens rejected Grievance No. 1072444 as untimely because the grievance did not provide an incident date. Mr. Batchelor filed Grievance No. 1072895 on January 30, 2024 challenging the deduction of fines and court costs imposed in his underlying criminal case.[21] Facility Grievance Coordinator Owens rejected Grievance No. 1072895 on February 22, 2024 on

the merits, explaining Mr. Batchelor must petition the court for relief regarding his payment of fines and court costs.[22]

Mr. Batchelor disagrees with Grievance Coordinator Orlando's Declaration.[23] He contends he filed a grievance about the January 25, 2024 incident but Grievance Coordinator Orlando rejected it.[24] Mr. Batchelor cites "Plaintiff's Exhibit #6" but he did not provide us with this, or any exhibit in response to summary judgment.

The Officers' appendix in support of its summary judgment motion contains documents Mr. Batchelor produced in discovery regarding exhaustion of his claims through the grievance process.[25] Mr. Batchelor contends he reported abuse on February 14, 15, and 22, 2024 through the abuse hotline under Department of Corrections policy DC-ADM 001.[26] Mr. Batchelor's discovery response asserts his February 2024 reports to the abuse hotline under ADM 001 constitutes exhaustion of administrative remedies under the Department's policy DC-ADM-804.[27]

In addition to his reports to the abuse hotline under Policy DC-ADM 001, Mr. Batchelor contends he prepared a grievance dated January 25, 2024 regarding Lieutenant Spagnoletti's use of pepper spray and Grievance Coordinator Orlando's rejection of the grievance.[28] Grievance Coordinator Orlando swears the rejection letter produced by Mr. Batchelor and allegedly from her is not genuine, she did not send Mr. Batchelor the rejection letter, she never would have sent such a letter because it is not the proper procedure followed for a grievance rejection and not on a Grievance Rejection Form in compliance with DC-ADM 804, and a grievance rejection would have been assigned a grievance number in accordance with DC-ADM 804 and it bears no grievance number.[29] We have no record evidence Mr. Batchelor attempted to refile a rejected grievance of the January 25, 2024 incident or an appeal within the Facility.

***Mr. Batchelor sued Lt. Spagnoletti and supervisors for the January 25, 2024 incident.***

Mr. Batchelor sued Lieutenant Spagnoletti alleging Lieutenant Spagnoletti's use of pepper spray constitutes excessive force in violation of the Eighth Amendment because Mr. Batchelor no longer resisted officers' attempts to control the fight and he had been restrained face down on the ground with his hands cuffed behind his back.[30] Mr. Batchelor also alleges Lieutenant Spagnoletti violated the First Amendment by using excessive force in retaliation for Mr. Batchelor's earlier-filed complaints about Lieutenant Spagnoletti.[31]

Mr. Batchelor sued supervisors Superintendent Terra, Unit Manager Grady, and Security Captain Young under an Eighth Amendment deliberate indifference theory. Mr. Batchelor alleged he made "abuse allegations" regarding the January 25, 2024 pepper spray incident to the "abuse hotline" on February 14, 15, and 22, 2024, in "writings" to Superintendent Terra, Unit Manager Grady, and Security Captain Young, and by "personally speaking" with "medical personnel" and Unit Manager Grady.[32] Mr. Batchelor alleges Superintendent Terra, Unit Manager Grady, and Security Captain Young did not investigate or address Mr. Batchelor's February 2024 reports of abuse.[33] Mr. Batchelor alleged the failure to investigate Lieutenant Spagnoletti's use of pepper spray is a "cover-up" by Superintendent Terra, Unit Manager Grady, and Security Captain Young.[34] Mr. Batchelor also alleged Superintendent Terra, Unit Manager Grady, and Security Captain Young "were informed" and "well aware" of Lieutenant Spagnoletti's abuses of Mr. Batchelor before the January 25, 2024 pepper spray incident.[35]

We screened Mr. Batchelor's amended Complaint as required by Congress under 28 U.S.C. § 1915A, granted Mr. Batchelor leave to proceed with claims against Defendant Lieutenant Spagnoletti for First Amendment retaliation, Eighth Amendment excessive force, and common law assault and battery and against Defendants Superintendent Terra, Unit Manager Grady, and

Security Captain Young for Eighth Amendment deliberate indifference claims based on Mr. Batchelor's allegations these Defendants knew of, and participated in, Lieutenant Spagnoletti's alleged use of excessive force.[36] We held an initial pre-trial conference with the parties, issued a Scheduling Order, and the case moved into discovery.[37]

## II. Analysis

Lieutenant Spagnoletti, Superintendent Terra, Unit Manager Grady, and Captain Young now seek summary judgment on Mr. Batchelor's claims partially relying on the video footage of the January 25, 2024 incident.[38] They argue: (1) Mr. Batchelor did not exhaust his administrative remedies before filing a lawsuit as required by the Prison Litigation Reform Act; (2) there is nothing in the record to support an Eighth Amendment claim against Lieutenant Spagnoletti because the video of the January 25, 2024 incident shows the use of pepper spray to restore order after Mr. Batchelor attacked another incarcerated man, the First Amendment claim fails because Lieutenant Spagnoletti would have made the same decision in deploying the pepper spray to restore order, and sovereign immunity bars the state law assault and battery claim; (3) the record does not demonstrate a fact issue to support Eighth Amendment claims against Superintendent Terra, Unit Manager Grady, and Security Captain Young; and (4) qualified immunity bars Mr. Batchelor's claims against all Defendants.

Mr. Batchelor opposes summary judgment arguing he exhausted his administrative remedies and any portion unexhausted is due to the Facility's conduct making administrative remedies unavailable to him and fact issues preclude summary judgment on his First Amendment retaliation, Eight Amendment excessive force claim, and deliberate indifference claims. Mr. Batchelor does not address the "same decision defense" to the First Amendment claim, sovereign immunity as a bar to the state law assault and battery claim, and qualified immunity.

We conclude there are no genuine issue of material fact. We grant the Officers' Motion for summary judgment.

### A.  Mr. Batchelor has not shown he exhausted his administrative remedies.

Congress through the Prison Litigation Reform Act requires incarcerated persons challenging the conditions of their confinement to exhaust all available administrative remedies before filing an action here.[39] The only exception to the Act's mandatory exhaustion requirement is the unavailability of administrative remedies to the incarcerated person.[40] "An administrative remedy is unavailable when it 'operates as a simple dead end[,] ... is so opaque that it becomes, practically speaking, incapable of use, or when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'"[41]

We evaluate Mr. Batchelor's compliance with the Department of Corrections' administrative regulations governing grievances by incarcerated persons to determine whether he properly exhausted his claims.[42] The Commonwealth's Department of Corrections implemented a Grievance System Policy at DC-ADM 804 for incarcerated persons seeking to challenge conditions of confinement.[43] The Commonwealth through directive ADM 804 creates a three-step process: (1) an incarcerated person must first submit a grievance to the Facility Grievance Coordinator who reviews the grievance to determine whether it is properly submitted in accordance with the policy and, if properly submitted, is reviewed by a Grievance Officer who must respond to the grievance; (2) an incarcerated person may appeal the initial review to the Facility Manager who reviews the appeal and provides a reason for the decision; and (3) an incarcerated person may appeal the Facility Manager's decision to the Secretary of Corrections' Office of Inmate Grievances and Appeals ("SOIGA").[44] The Commonwealth's ADM 804 is the *exclusive* means of exhaustion under the Act.[45]

The Officers argue Mr. Batchelor did not exhaust his administrative remedies under ADM 804 because he did not file a grievance about "all allegations" raised before us.[46] The Officers cite to Facility Grievance Coordinator Orlando's sworn declaration Mr. Batchelor did not submit a grievance on January 25, 2024, did not submit a grievance relating to his amended Complaint, and submitted only two grievances within fifteen working days of the January 25, 2024 incident as required by ADM 804.[47] The two grievances filed by Mr. Batchelor at Nos. 1072444 and 1072895 do not relate to the January 25, 2024 pepper spray incident.[48] Mr. Batchelor disagrees with the Officers' assertion Grievance Nos. 1072444 and 1072895 do not pertain to the January 25, 2024 pepper spray incident, referring to two other documents we do not have in the record.[49]

Facility Grievance Coordinator Orlando also swears the document Mr. Batchelor produced in discovery dated January 25, 2024 purporting to be his grievance of Lieutenant Spagnoletti's use of pepper spray and Grievance Coordinator Orlando's rejection of the grievance is not genuine.[50] Facility Grievance Coordinator Orlando swears she did not send Mr. Batchelor the rejection letter, she never would have sent such a letter because it is not the proper procedure followed for a grievance rejection and not on a Grievance Rejection Form in compliance with DC-ADM 804, and a grievance rejection would have been assigned a grievance number in accordance with DC-ADM 804 and it bears no grievance number.[51]

Mr. Batchelor alleged he reported the January 25, 2024 pepper spray incident to the "abuse hotline" on February 14, 15, and 22, 2024 under ADM 001.[52] To the extent Mr. Batchelor asserts this report satisfies the mandatory grievance requirement of ADM 804, it is denied as a matter of law. Our Court of Appeals held in 2023 ADM 804 and ADM 001 are not "interchangeable" and while ADM 001 "produces investigative reports that may help the ADM 804 process along, among other purposes, it does not replace ADM 804."[53]

Mr. Batchelor alleges he exhausted all available remedies required by the Prison Litigation Reform Act before filing his lawsuit and any part of his grievance not exhausted is because the Facility's "personnel [did] not adher[e] to the specifications of policy; thus making those administrative remedies unavailable; which is an exception to the exhaustion requirement."[54] At the summary judgment stage, Mr. Batchelor must do more than rely on his allegations; he must point to specific facts in the record showing there is a genuine issue for trial.[55] As a matter of law, ADM 804 is the exclusive and mandatory grievance procedure. The only exception to the mandatory exhaustion requirement is the unavailability of administrative remedies. The Officers, as the party moving for summary judgment, presented evidence Mr. Batchelor did not comply with the grievance process prescribed by ADM 804 with regard to the January 25, 2024 incident. The summary judgment standard requires Mr. Batchelor, as the non-moving party, to identify facts in the record enabling us to find a fact issue on exhaustion. Mr. Batchelor did not produce evidence to create a fact issue on his compliance with ADM 804. Mr. Batchelor did not cite record evidence showing a fact issue on whether he exhausted his excessive force and retaliation claims.

We cannot find evidence Mr. Batchelor administratively exhausted his grievances relating to January 25, 2024 conduct. But we are also mindful of some minor question of fact based on alleged documents relating to exhaustion as either not produced or not genuine. Mr. Batchelor remains incarcerated and may not be able to access records after months of discovery. We evaluate the merits of Mr. Bachelor's claims as well given the potential confusion.

**B.  Mr. Batchelor offers no basis for a jury to find excessive force.**

Mr. Batchelor claims Officer Spagnoletti's use of pepper spray on January 25, 2024 violated his Eighth Amendment right to be free from excessive force. We disagree after studying

the record. We find no genuine issue of fact to defeat summary judgment dismissing his Eighth Amendment claim.

We first determine whether fact issues preclude summary judgment on Mr. Batchelor's excessive force claim against Lieutenant Spagnoletti. The Eighth Amendment prohibits prison officials from the "unnecessary and wanton infliction of pain" offending "contemporary standards of decency."[56] The "core judicial inquiry" is whether "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."[57] Force used "maliciously and sadistically for the very purpose of causing harm" violates the Eighth Amendment.[58] The Supreme Court almost forty years ago in *Whitley* identified several factors for us to apply in determining whether a correctional officer used excessive force: (1) "the need for the application of force": (2) "the relationship between the need and amount of force that was used"; (3) "the extent of injury inflicted"; (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them"; and (5) "any efforts made to temper the severity of a forceful response."[59]

We view the facts as depicted in the video to determine whether there are genuine issues of fact precluding summary judgment.[60] We may enter summary judgment in favor of Lieutenant Spagnoletti if the video refutes Mr. Batchelor's claim Lieutenant Spagnoletti used excessive force against him and does not permit an inference Lieutenant Spagnoletti acted maliciously and sadistically.[61]

Mr. Batchelor concedes he punched Mr. Mayo from behind and the fight with Mr. Mayo ended only after officers intervened.[62] But he disputes the Officers' interpretation of the video.[63] Mr. Batchelor alleges his cell door "mysteriously opened" on January 25, 2024, allowing him to leave his cell without restraint (against Facility policy) which he attributes to Lieutenant

Spagnoletti's comment at breakfast on the morning of January 25, 2024, to the effect he (Lieutenant Spagnoletti) wished he had "a chance to F [Mr. Batchelor] up or had a chance for somebody to F [Mr. Batchelor] up."[64] Mr. Batchelor swore another incarcerated man, Khaleel Henry, heard Lieutenant Spagnoletti's threat on January 25, 2024.[65] Mr. Batchelor claims the Facility, possibly through Lieutenant Spagnoletti, intentionally opened his cell door to advance Lieutenant Spagnoletti's plan to have someone "F [Mr. Batchelor] up."[66] Mr. Batchelor swears Facility correctional officers "paid" Mr. Mayo "to try to harm [Mr. Batchelor] whenever [Mr. Mayo] had got a chance."[67] Mr. Batchelor swore Mr. Mayo told him a few days before January 25, 2024 some unidentified correctional officers paid Mr. Mayo to "try to harm" Mr. Batchelor.[68] Mr. Batchelor swears he punched Mr. Mayo from behind in a preemptive strike to protect himself from a perceived imminent attack by Mr. Mayo.[69] Mr. Batchelor now argues, but did not allege, Lieutenant Spagnoletti said: "How's that you a**h***" after deploying the pepper spray.[70] Mr. Batchelor argues this comment shows Lieutenant Spagnoletti used pepper spray in retaliation for Mr. Batchelor's earlier complaints about Lieutenant Spagnoletti's hostility toward him.

Mr. Batchelor's claim of excessive force focuses on the **timing** of Lieutenant Spagnoletti's use of pepper spray. Mr. Batchelor contends Lieutenant Batchelor used excessive force by deploying pepper spray **after** officers separated Mr. Batchelor from Mr. Mayo and **after** officers had already restrained Mr. Batchelor on the ground with his hands cuffed behind his back and after he no longer resisted efforts by officers to regain control over the fight with Mr. Mayo.[71] Mr. Batchelor contends the video shows officers had already handcuffed him **before** Lieutenant Spagnoletti even arrived on the scene so there was no need for any additional force.[72] Mr. Batchelor suggests the angle of the camera capturing the video makes it difficult to determine whether

officers had handcuffed him by the time Lieutenant Spagnoletti deployed the pepper spray because of the officers standing around him.[73]

The officers counter the video shows Mr. Batchelor started the fight with Mr. Mayo, prison staff attempted to break up the fight but Mr. Batchelor continued to hit Mr. Mayo, ignored commands to stop fighting, and continued to resist officers attempting to restrain him.[74] The Officers argue the video and incident report show Lieutenant Spagnoletti deployed the pepper spray for the purposes of restoring order, while Mr. Batchelor failed to comply with officers commands to stop fighting and continued to resist officers' attempts to restrain him. The Officers contend the video eliminates any allegation Lieutenant Spagnoletti used force "maliciously and sadistically" to cause Mr. Batchelor harm.

We apply the *Whitley* factors. We must conclude a reasonable jury could not find Lieutenant Spagnoletti used excessive force based on the record including the video.

The first factor focuses on the need for the application of force. The video shows the necessary application of some force to regain control over the fight between Mr. Batchelor and Mr. Mayo in the Facility's common area. Mr. Batchelor started the fight against Mr. Mayo without provocation (for whatever reason) when he approached Mr. Mayo from behind and hit him in the head causing the two to fall to the ground where they continued to fight. Two officers unsuccessfully attempted to separate the two men and six additional officers arrived on the scene in less than one minute in an effort to secure the scene and restore order. We reject Mr. Batchelor's argument the deployment of pepper spray after being handcuffed makes any force excessive. Even if officers had Mr. Batchelor in handcuffs at the time Lieutenant Spagnoletti deployed the pepper spray, "it does not automatically follow that the use of force on him was excessive."[75] Our Court of Appeals rejected the same argument where an incarcerated man argued the fact of his

handcuffing made a correctional officer's use of force excessive. Our Court of Appeals explained the evidence, including a video of the incident, showed correctional officers perceived the incarcerated man, physically large and with convictions for violent behavior, to be in an agitated state in a common area, the use of force appears to have been used to secure the incarcerated man, and officers did not use force after the incarcerated man had been secured.[76] The first factors weighs heavily in favor of Lieutenant Spagnoletti.

The second *Whitley* factor considers the relationship between the need for force and amount of force used as assessed from the perspective of a reasonable officer on the scene. Mr. Batchelor and Mr. Mayo are seen on the floor scuffling and fighting between 11:10:56, when the first two officers arrived on the scene, and 11:11:17 when Lieutenant Spagnoletti deployed the pepper spray—a matter of seconds. When viewing the force used from the perspective of a reasonable officer, we allow for the "split-second judgments" officers are often forced to make in "tense, uncertain, and rapidly evolving" circumstances.[77] This factor weighs heavily in favor of Lieutenant Spagnoletti.

The third *Whitley* factor considers the extent of Mr. Batchelor's injury. The lack of significant injury weights against an excessive force claim, but it is not dispositive.[78] By 11:12:46, officers had Mr. Batchelor to his feet and out of the common area for medical treatment. The Facility's medical records show a nurse examined Mr. Batchelor around fifteen minutes later at 11:27:33 and irrigated his eyes.[79] Mr. Batchelor did not complain of pain in his head, spine, chest, abdomen, or extremities, and did not complain of chest heaviness, palpitations, or shortness of breath and there is no record of Mr. Batchelor reporting symptoms of an asthma flare.[80]

The fourth *Whitley* fact considers the extent of the threat to the safety of staff and incarcerated persons, as reasonably perceived by responsible officials on the basis of the facts

13

known to them. The video shows another incarcerated man on the phone in the common area only several feet away from the fight and three other incarcerated men standing outside their cells observing the fight. The threat to the safety of the incarcerated men and the responding officers weighs heavily in favor of summary judgment.

The fifth factor considers efforts made by correctional officers to temper the severity of a forceful response. The video shows once officers separated Mr. Batchelor and Mr. Mayo far enough apart so the two were unable to touch one another and after both men were secured, officers did not continue to apply force and Lieutenant Spagnoletti did not deploy additional pepper spray.

Considering the need for force, the amount of force used as assessed from the perspective of a reasonable officer on the scene, the extent of injury inflicted to Mr. Batchelor's eyes needing irrigation but no record of residual injury to his eyes or other injury, and for the safety of the officers and other incarcerated persons present in the common area, we conclude Lieutenant Spagnoletti used pepper spray to restore order and end the fight between Mr. Batchelor and Mr. Mayo. Lieutenant Spagnoletti used a burst of pepper spray only after four officers struggled, unsuccessfully, to separate Mr. Batchelor and Mr. Mayo and gain control over the situation, a legitimate penological concern and "maliciously and sadistically" to cause Mr. Batchelor harm

We are also guided by the reasoning of our colleagues when reviewing officers' use of pepper spray. The use of pepper spray to "subdue recalcitrant prisoners is not cruel and unusual when reasonably necessary."[81] Our colleagues find the use of pepper spray is a reasonable use of force in restoring order. For example, Judge Baylson granted summary judgment in favor of a prison guard who used pepper spray to subdue a pretrial detainee during transport.[82] A video showed the detainee, seated in a wheelchair for transport, plant his feet on the ground preventing officers from pushing the wheelchair and attempting to rise out of the wheelchair during transport.

14

While two officers struggled to subdue the detainee in the wheelchair, another officer deployed one burst of pepper spray. Judge Baylson reviewed the video to determine whether the use of pepper spray constituted excessive force in relation to the legitimate governmental purpose of moving the housing location of the detainee.[83] Judge Baylson reasoned the officer's use of pepper spray is not excessive in response to the detainee's escalating behavior which multiple officers could not control with physical restraint alone, where the detainee continued to resist officers in an open area of the jail posing a security threat to a housing unit, and where the situation "transformed from peaceful into an uncontrolled physical struggle" and a "powder keg" potentiality creating a "tense, uncertain, and rapidly evolving" situation requiring a response by prison officials to restore order and discipline and to maintain security.[84] Applying the law to the facts shown in the video, Judge Baylson concluded no reasonable juror could find the officer's single, brief use of pepper spray excessive under the circumstances because the officer's actions were reasonable, necessary, and tempered given the circumstances.[85]

Judge Lanzillo applied the *Whitley* factors to determine an excessive force claim brought by an incarcerated man for a correctional officer's use of pepper spray.[86] An incarcerated man refused to remove his arms from the small door through which meals are passed into a cell and then pushed a mattress through the door to block the opening. When officers attempted to pull the mattress out, the incarcerated man grabbed the wrist of one officer and attempted to grab the hand of another. One of the officers deployed a short burst of pepper spray in response.[87] Judge Lanzillo concluded the use of pepper spray necessary in the situation where the incarcerated man refused to comply with orders and grabbed the arms of two officers, reasonable from the perspective of a reasonable officer on the scene, the lack of significant injury to the incarcerated man weighed in favor of the officers, the incarcerated man's conduct threatened the safety of staff particularly

where the incarcerated man refused to comply with orders, and the officers gave the incarcerated man several direct orders which were ignored before using the pepper spray.[88] Judge Lanzillo granted summary judgment to the officers concluding no reasonable jury could conclude the officer's use of pepper spray amounted to excessive force.[89]

Judge Mariani granted summary judgment to corrections officers in an excessive force claim for the use of pepper spray to secure an incarcerated man in his cell.[90] The evidence, including video evidence, showed the incarcerated man refused an officer's orders to return to his cell and officers used pepper spray only after the incarcerated man assaulted another officer. Judge Mariani applied the *Whitley* factors and concluded the evidence showed the necessary use of pepper spray to secure the incarcerated man who refused to obey direct orders to return to his cell and assaulted another officer, nothing in the record showed significant injury with the record showing the incarcerated man received prompt medical treatment following the spray and did not adduce evidence of lasting injuries, the incarcerated man posed a reasonable threat to the safety of officers and other incarcerated persons, and the force ended when the officers regained control over the incarcerated man.[91] Judge Mariani, like Judge Baylson and Judge Lanzillo, recognized courts in this Circuit "have widely upheld the reasonableness" of the use of pepper spray to "gain compliance when a prisoner ignores orders from correctional officers."[92]

Viewing the record evidence, including the video, in the light most favorable to Mr. Batchelor and applying the *Whitley* factors, no reasonable jury could conclude Lieutenant Spagnoletti's use of pepper spray constituted excessive force. There is no evidence Lieutenant Spagnoletti intended to maliciously and sadistically cause harm to Mr. Batchelor. Rather, the video shows the use of pepper spray to restore order to a physical altercation between Mr. Batchelor and Mr. Mayo in a common area of the Facility. We enter judgment in favor of Lieutenant Spagnoletti.

### C.  There is no evidence of a causal link between Mr. Batchelor's grievances and the pepper spraying to support a First Amendment retaliation claim.

Mr. Batchelor claims Lieutenant Spagnoletti used pepper spray on January 25, 2024, in retaliation for Mr. Batchelor's earlier complaints in violation of the First Amendment.[93] To succeed on a First Amendment retaliation claim, Mr. Batchelor must show (1) constitutionally protected activity; (2) an "adverse action" at the hands of prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) a causal link between the exercise of the constitutional right and the adverse action taken against him.[94] Mr. Batchelor has the initial burden of establishing a *prima facie* case of retaliation.[95]

If Mr. Batchelor establishes a *prima facie* case, the Officers may still prevail on summary judgment by proving Lieutenant Spagnoletti "would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest."[96]

The Officers concede filing prison grievances is protected activity and the deployment of pepper spray is an adverse action.[97] The Officers challenge the causal link prong of the prima facie claim for First Amendment retaliation, arguing Lieutenant Spagnoletti would have made the same decision because the evidence shows he has a legitimate penological purpose in deploying the pepper spray to restore order and would have used the same force regardless of Mr. Batchelor's past grievances. Mr. Batchelor does not respond to the same decision defense argument.

We are directed by our Court of Appeals to evaluate, on summary judgment, the same decision defense against "'the quantum of evidence' of the misconduct to determine whether the prison officials' decision to discipline an inmate for his violations of prison policy was within the broad discretion we must afford them[,]" or whether "a reasonable fact finder could conclude that the misconduct was issued in retaliation for [the protected conduct] … and not in furtherance of legitimate penological goals."[98]

For the same reasoning applied to Mr. Batchelor's excessive force claim, we conclude there is no evidence Lieutenant Spagnoletti deployed pepper spray in retaliation for Mr. Batchelor's earlier-filed complaints. The video of the January 25, 2024 incident shows Mr. Batchelor instigating a fight with Mr. Mayo in a common area of the Facility, the two men fighting on the ground, and the arrival of eight officers to subdue the two men and restore order. All of this, including Lieutenant Spagnoletti's use of pepper spray, occurred within the space of seconds. There is no evidence to create a fact issue on the Officers' same decision defense. The fact is Mr. Batchelor chose to start a fight with Mr. Mayo creating a chaotic situation in a common area of the Facility with other incarcerated persons present. Lieutenant Spagnoletti's burst of pepper spray is reasonably related to a legitimate penological interest in restoring order in the Facility. We grant summary judgment to Lieutenant Spagnoletti on the First Amendment retaliation claim.

### D.  Sovereign immunity bars Mr. Batchelor's state law assault and battery claims against Lieutenant Spagnoletti.

Mr. Batchelor sued Lieutenant Spagnoletti for common law assault and battery for the use of pepper spray. Pennsylvania's General Assembly provides Commonwealth officials and employees acting within the scope of their duties "shall … remain immune from suit except as the General Assembly shall specifically waive the immunity."[99] Sovereign immunity "applies to Commonwealth employees in both their official and individual capacities, so long as the employees are acting with the scope of their duties."[100] A Commonwealth employee's conduct is within the scope of his employment if "it is of a kind and nature that the employee is employed to perform; [and] it occurs substantially within the authorized time and space limits. …"[101]

The General Assembly waived sovereign immunity in only nine specific instances: (1) motor vehicle liability; (2) medical-professional liability; (3) care, custody or control of personal property; (4) a dangerous condition on Commonwealth-owned real estate, highways, and

sidewalks; (5) potholes and other dangerous conditions under the jurisdiction of a Commonwealth agency; (6) care, custody, or control of animals in the possession or control of a Commonwealth party; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines.[102]

Mr. Batchelor did not allege, and did not show after discovery, Lieutenant Spagnoletti's conduct fell outside the scope of his duties. We conclude Lieutenant Spagnoletti's use of force arose "within the authorized time and space limits" of his employment with the Department of Corrections in the management of the Commonwealth's prisons.[103] Pennsylvania's General Assembly did not waive sovereign immunity for intentional acts, like assault and battery, committed by a Commonwealth employee acting within the scope of his employment.[104] Sovereign immunity bars the assault and battery claim against Lieutenant Spagnoletti.

### E. Mr. Batchelor may not proceed on his deliberate indifference claims against Superintendent Terra, Unit Manager Grady, and Security Captain Young.

Mr. Batchelor asserted Eighth Amendment supervisory liability claims against supervisors Superintendent Terra, Unit Manager Grady, and Security Captain Young. Mr. Batchelor alleged two theories of supervisory liability: (1) Superintendent Terra, Unit Manager Grady, and Security Captain Young knew but were deliberately indifferent to Lieutenant Spagnoletti's pattern of abuses; and (2) Superintendent Terra, Unit Manager Grady, and Security Captain Young failed to train officers like Lieutenant Spagnoletti on the use of force, "helping" subordinates to cover-up abuses, circumvented investigations, falsified reports, and "penalize[ed] the victimized inmate" after learning of abuses.[105]

Supervisors may be liable as policymakers for the unconstitutional acts of their subordinates if it is shown they "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm" and if they 'participated in violating the plaintiff's rights, directed others to violate them, or, as the person

in charge, had knowledge or and acquiesced in the subordinate's unconstitutional conduct."[106] Supervisors may be liable under the second theory of liability if they participated in a violation of the incarcerated person's rights, directed others to violate them, or, "as the person in charge, had knowledge of or acquiesced in his subordinates' violations."[107]

We allowed Mr. Batchelor's supervisory liability claims to go forward after screening his amended Complaint.[108] We are now at the summary judgment stage. To avoid summary judgment, Mr. Batchelor must show an underlying constitutional violation to support his supervisory liability claims against Superintendent Terra, Unit Manager Grady, and Security Captain Young.[109] In *Hunter v. Sutter*, a detained man alleged prison employees used excessive force when transferring to a restrictive housing unit and sued supervisors for the use of excessive force.[110] Judge Lanzillo concluded the supervisory liability claim could not succeed because the summary judgment record did not support prison employees violated Mr. Hunter's constitutional rights in their use of excessive force in the cell transfer.[111]

We already concluded the record does not support a finding Lieutenant Spagnoletti's use of pepper spray under the circumstances violated Mr. Batchelor's constitutional rights. Mr. Batchelor's supervisory liability claim against Superintendent Terra, Unit Manager Grady, and Security Captain Young cannot succeed.

### F. We need not address the qualified immunity arguments.

The Officers move for summary judgment on a qualified immunity theory. Qualified immunity shields officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[112] Our Court of Appeals directs us to resolve claims of qualified immunity by applying a two-prong inquiry in whatever order "we deem most appropriate for the particular case before us": (1)

whether the plaintiff sufficiently alleged a violation of a constitutional right; and (2) whether the right is clearly established at the time of the official's conduct.[113]

We already concluded the Officers did not violate Mr. Batchelor's constitutional rights. We need not resolve qualified immunity claims.[114]

### III.  Conclusion

We grant summary judgment in favor of Defendants.

---

[1] Mr. Batchelor is currently housed at SCI-Greene. ECF 56-1, Officer's Statement of undisputed material facts ("SUMF") ¶ 1; ECF 59, Batchelor response to SUMF ¶ 1. The January 25, 2024 incident occurred at SCI-Phoenix.

Our Policies require parties moving for relief under Fed. R. Civ. P. 56 include a Statement of Undisputed Material Facts and an appendix to support summary judgment. Lieutenant Spagnoletti, Superintendent Terra, Unit Manager Grady, and Captain Young ("Officers") filed a Motion for summary judgment, Memorandum in support of summary judgment, Statement of Undisputed Material Facts ("SUMF"), and appendix at ECF 56, 56-1, and 56-2 through 56-13. Mr. Batchelor responded to Motion for summary judgment at ECF 58, 59, 61. Mr. Batchelor refers to "Plaintiff's Exhibits" in his response to the Officers SUMF. *See* ECF 59. But we did not receive a supplemental appendix from Mr. Batchelor and cannot locate the documents to which he refers.

[2] ECF 56-1, Officers SUMF ¶ 7; ECF 59, Batchelor response to SUMF ¶ 7.

[3] ECF 56-1, Officers SUMF ¶ 8; ECF 59, Batchelor response to SUMF ¶ 8.

[4] ECF 56-1, Officers SUMF ¶ 9; ECF 59, Batchelor response to SUMF ¶ 9. The January 25, 2024 event is captured on video tape. The Officers produced the video in discovery and included it in the summary judgment record at ECF 56-13. The Officers produced the Declaration of Deputy Superintendent of Internal Security at SCI-Phoenix Harold Kertes swearing to the authenticity of the of the January 25, 2024 video and the Declaration of Brian K. Fulton, an employee of the Pennsylvania Department of Corrections at SCI-Greene, swearing Mr. Batchelor viewed the video in Mr. Fulton's presence on December 26, 2024. ECF 60, 60-1, 60-2.

[5] ECF 56-1, Officers SUMF ¶¶ 9-10; ECF 59, Batchelor response to SUMF ¶¶ 9-10. We reference the time-stamp numbers on the video, for example, 11:10:48 which we construe as 11:10 am and 48 seconds on January 25, 2024.

[6] ECF 56-1, Officers SUMF ¶¶ 7-14; ECF 59, Batchelor response to SUMF ¶¶ 7-14. Mr. Batchelor for the most part agrees with the timing of the events and admits he attacked Mr. Mayo. Mr. Batchelor disagrees with the Officers' interpretation of the video; he believes the video shows him

"laying face down and subdued [sic]" by the time the two additional officers arrived on the scene at 11:11:08. *See* ECF 59, Batchelor response to SUMF ¶¶ 11-14.

[7] ECF 56-1, Officers SUMF ¶ 11; ECF 59, Batchelor response to SUMF ¶ 11.

[8] ECF 56-13, video. A total of eight officers responded to the fight between Mr. Batchelor and Mr. Mayo.

[9] ECF 56-1, Officers SUMF ¶¶ 12-13; ECF 59, Batchelor response to SUMF ¶¶ 12-13. Again, Mr. Batchelor disagrees with the Officers' interpretation of the video, contending the first two responding officers subdued him before any other officers arrived. Mr. Batchelor also contends the video shows him having difficulties breathing because of his severe asthma. *Id.*

[10] ECF 56-1, Officers SUMF ¶¶ 14-15.

[11] *Id.* ¶ 15; ECF 56-11 at Appx. 92-100. Mr. Batchelor contends the pepper spray permanently damaged the vision in his right eye and triggered his asthma. ECF 59, Batchelor's response to SUMF ¶ 12; ECF 61 at 3. Mr. Batchelor disputes the accuracy of the January 25, 2024 medical records which did not note his alleged respiratory distress. Mr. Batchelor asserts the medical records are "not accurate" but does not provide us with medical records to show respiratory distress or injury from the pepper spray (other than irrigation of the eyes after the pepper spray). ECF 59 ¶ 15.

[12] ECF 56-12 at Appx. 101-102.

[13] *Id.*

[14] ECF 56-1, Officers SUMF ¶ 16; ECF 56-5 at Appx. 66.

[15] ECF 56-1, Officers SUMF ¶ 16. Mr. Batchelor concedes he received a misconduct report and concedes he refused to attend the disciplinary hearing but did so for "fear of being attacked by staff after filing reports informing superiors of issues about Lieutenant Spagnoletti." ECF 59, Batchelor response to SUMF ¶ 16.

[16] ECF 56-1, Officers SUMF ¶ 16; ECF 56-6 at Appx 67-68.

[17] ECF 56-10 at Appx. 89-90, Declaration ¶¶ 2-3, 12.

[18] *Id.* at Appx. 90-91, Declaration ¶¶ 13-14.

[19] *Id.* at Appx. 90-91, Declaration ¶ 14.

[20] ECF 56-7 at Appx. 72-73.

[21] ECF 56-8 at Appx. 74-79.

[22] *Id.* at Appx. 74.

[23] ECF 59, Batchelor response to SUMF ¶¶ 20-21.

[24] *Id.* ¶ 20.

[25] ECF 56-9 at Appx. 80-88.

[26] *Id.* at Appx. 81-82. The Department of Corrections maintains an "Inmate Abuse" policy at DC-ADM 001. The purpose of ADM 001 is "to ensure that staff do not subject an inmate to corporal or unusual punishment, or personal abuse or injury." *Prater v. Dep't of Corr.*, 76 F.4th 184, 204 (3d Cir. 2023).

[27] ECF 56-9 at Appx. 81.

[28] *Id.* at Appx. 83-85.

[29] ECF 56-10 at Appx. 91, Declaration ¶ 15.

[30] ECF 56-4 at Appx. 49, amended Complaint ¶¶ 18-19.

[31] *Id.*

[32] ECF 56-4 at Appx. 50, amended Complaint ¶ 25.

[33] *Id.* at Appx. 50-51, amended Complaint ¶¶ 26-27.

[34] *Id.* at Appx. 51, amended Complaint ¶ 28. To the extent allegations of a "cover-up" is meant to support a conspiracy claim, we dismissed conspiracy claims in our earlier screening memoranda as earlier noted. See ECF 9, 17.

[35] ECF 56-4 at Appx. 51, amended Complaint ¶¶ 29, 30, 33, 35, 48-49.

[36] ECF 17. Mr. Batchelor's opposition to summary judgment refers to violations of his rights under the First, Eighth, and Fourteenth Amendments. *See* ECF 61 at 1. We dismissed Mr. Batchelor's Fourteenth Amendment claims in our earlier screening memoranda. *See* ECF 9, 17.

[37] ECF 43.

[38] ECF 56. Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011)). "Summary judgment is appropriate only if, after drawing all reasonable inferences in favor of the non-moving

party, there exists 'no genuine dispute as to any material fact' and the movant 'is entitled to judgment as a matter of law.'" *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 469 (3d Cir. 2021) (quoting *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 770 (3d Cir. 2018)). We do not weigh evidence or make credibility determinations. *Peroza-Benitez v. Smith*, 994 F.3d 157, 164 (3d Cir. 2021) (quoting *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019)).

"The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." *Willis*, 808 F.3d at 643 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Id.* (citing *Celotex*, 477 U.S. at 322–23).

[39] *Talley v. Clark*, 111 F.4th 255, 262-63 (3d Cir. 2024). Section 1997e(a) of the Act provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

[40] *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 305 (3d Cir. 2020) (quoting *Ross v. Blake*, 578 U.S. 632, 642 (2016)).

[41] *Id.* (quoting *Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019)).

[42] *Prater*, 76 F.4th at 203.

[43] *Downey,* 968 F.3d at 305-06.

[44] *Prater*, 76 F.4th at 203-04. *See* https://www.pa.gov/content/dam/copapwp-pagov/en/cor/documents/about-us/doc-policies/804%20Inmate%20Grievances.pdf. By its terms, ADM 804 does not apply when an incarcerated person alleges sexual abuse or his claim concerns an "incident [] of an urgent or emergency nature" or misconduct charges. *Prater*, 76 F.4th at 204. If one of the exceptions applies, ADM 804's exhaustion requirement is excused. *Id.* (citing *Downey*, 968 F.3d at 307). Mr. Batchelor does not allege this conduct arising in the January 25, 2024 pepper spray incident.

[45] *Prater*, 76 F.4th at 204.

[46] ECF 56 at 6.

[47] ECF 56-10 at Appx. 89-91, Declaration ¶¶ 13-14.

[48] *Id.* at Appx. 90-91, Declaration ¶ 14.

[49] ECF 59, Batchelor response to SUMF ¶ 21.

[50] ECF 56-10 at Appx. 91, Declaration ¶ 15.

[51] *Id.*

[52] ECF 56-4 at Appx. 50, amended Complaint ¶ 25.

[53] *Prater*, 76 F.4th at 204.

[54] ECF 56-4 at Appx. 60, amended Complaint at "Exhaustion of Remedies;" ECF 59, Batchelor response to SUMF ¶¶ 20-21.

[55] *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288-89 (3d Cir. 2018) (at summary judgment, "[t]he non-moving party must oppose the motion and, in doing so, may not rest upon the mere allegations or denials of his pleadings" but, instead, "must set forth specific facts showing that there is a genuine issue for trial. Bare assertions, conclusory allegations, or suspicions will not suffice") (quoting *D.E. v. Central Dauphin Sch. Dist.*, 765 F.3d 260, 268-69 (3d Cir. 2014)) .

[56] *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (citations omitted).

[57] *Id.* at 6.

[58] *Young v. Martin*, 801 F.3d 172, 180 (3d Cir. 2015) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)).

[59] *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley,* 475 U.S. at 321). These are called the "*Whitley* factors."

[60] *Scott v. Harris*, 550 U.S. 372, 380-81 (2007).

[61] *Tindell v. Beard*, 351 F. App'x 591, 595-96 (3d Cir. 2009).

[62] ECF 56-3, N.T. Batchelor at Appx. 9-10.

[63] ECF 59, Batchelor's response to SUMF ¶¶ 11-14.

[64] ECF 56-4 at Appx. 49, amended Complaint ¶ 20; ECF 56-3, N.T. Batchelor at Appx. 6-7, 11 .

[65] ECF 56-3, N.T. Batchelor at Appx. 12.

[66] *Id.* at Appx. 7.

[67] *Id.*

[68] *Id.* at Appx. 7-8.

---

[69] *Id.* at Appx. 9.

[70] ECF 61 at 3.

[71] ECF 56-3 at Appx. 12-14.

[72] ECF 59, Batchelor response to SUMF ¶¶ 13, 14.

[73] *Id.* ¶ 14. Mr. Batchelor suggests we should review video footage "from another position." *Id.* We are unaware of, and the parties did not provide us with, another video taken from another angle.

[74] Officers SUMF ¶¶ 12-14.

[75] *Fennell v. Cambria Cnty. Prison*, 607 F. App'x 145, 148 (3d Cir. 2015).

[76] *Id.*

[77] *Johnson v. City of Phila.*, 837 F.3d 343, 349 (3d Cir. 2016) (quoting *Graham v. Connor*, 490 U.S. 386, 396-97 (1989)). *See also Kingsley v. Hendrickson*, 576 U.S. 389 (2015). In *Kingsley*, the Supreme Court reviewed a pretrial detainee's excessive force claim under an objective standard. The Court recognized application of an objective standard protects officers who act in good faith, recognizing "running a prison is an inordinately difficult undertaking" and "safety and order at these institutions requires the expertise of correctional officials, who must have substantial discretion to devise reasonable solutions to the problems they face" often made in a "split-second." *Id.* at 399 (quoting *Graham*, 490 U.S. at 397).

[78] *Wilkins v. Gaddy*, 559 U.S. 34 (2010).

[79] ECF 56-11 at Appx. 97.

[80] *Id.* at Appx. 92-100. Mr. Batchelor disagrees with the medical records, claiming he experienced respiratory distress from his asthma triggered by the pepper spray. But he does not provide us with medical records to support his claim of injury.

[81] *Gibson v. Flemming*, 837 F. App'x 860, 863 (3d Cir. 2020).

[82] *White v. Gonzales*, No. 22-1226, 2023 WL 6144846 (E.D. Pa. Sept. 20, 2023).

[83] *Id.* at *4.

[84] *Id.* at *4-*5. Judge Baylson applied the factors to determine excessive force claims brought by pretrial detainees (as opposed to convicted persons) identified by the Supreme Court in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015). In *Kingsley*, the Court applied six factors to determine whether force is excessive: "[1] the relationship between the need for the use of force and the

amount of force used; [2] the extent of the plaintiff's injury; [3] any effort made by the officer to temper or to limit the amount of force; [4] the severity of the security problem at issue; [5] the threat reasonably perceived by the officer; and [6] whether the plaintiff was actively resisting." *Id.* at 397. These are similar to the *Whitley* factors applied to excessive force claims brought by convicted persons.

[85] *White,* 2023 WL 6144846 at *5. *See also Williams v. Russell*, No. 20-3511, 2024 WL 2188914 (E.D. Pa. May 15, 2024). In *Williams*, Chief Judge Goldberg granted summary judgment in favor of prison officials on excessive force claims brought by a pretrial detainee. A video of the incident showed a pretrial detainee confronting another detainee at close range, the detainee charging at a correctional officer after the officer confronted the detainee about his behavior as to the other detainee, other officers interceding in the fight, and the deployment of pepper spray. *Id.* at *9. Chief Judge Goldberg concluded the use of pepper spray did not constitute excessive force given the video evidence. *Id.* (collecting cases concluding the use of pepper spray a reasonable use of force in response to a physically resistant pretrial detainee).

[86] *D'Alfonso v. Reddinger*, No. 21-280, 2023 WL 6215023 (W.D. Pa. Sept. 25, 2023).

[87] *Id.* at *2.

[88] *Id.* at *4-*5.

[89] *Id.* (collecting cases upholding the reasonableness of pepper spray by prison officials to correct conduct where incarcerated persons refused orders).

[90] *Warrick v. Harry*, No. 23-591, 2024 WL 2059084 (M.D. Pa. May 8, 2024).

[91] *Id.* at *5-*6.

[92] *Id.* at *5 (collecting cases).

[93] ECF 56-4 at Appx. 53, Amended Complaint ¶ 42.

[94] *Rauser v. Horn*, 241 F. 3d 330, 333-34 (3d Cir. 2001). Following *Rauser*, our Court of Appeals in *Watson v. Rozum*, 834 F.3d 417 (3d Cir. 2016) held an incarcerated person may satisfy the causation prong of a retaliation claim with evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action or (2) a pattern of antagonism coupled with timing suggesting a causal link. *Id.* at 422.

[95] *Watson*, 834 F.3d at 422.

[96] *Id.* This is referred to as the "same decision defense."

[97] ECF 56 at 12.

[98] *Watson*, F.3d at 426 (quoting *Carter v. McCrady*, 292 F.3d 153, 159 (3d Cir. 2002)).

[99] 1 Pa. Cons. Stat. Ann. § 2310.

[100] *Brautigam v. Fraley*, 684 F.Supp.2d 589, 593–94 (M.D. Pa. 2010) (internal quotation and citation omitted).

[101] *Id.* (internal quotation and citation omitted).

[102] 42 Pa. Cons. Stat. Ann. § 8522(b).

[103] *Steely v. Clemons*, No. 20-3778, 2021 WL 5758946, at *9-*10 (E.D. Pa. Dec. 3, 2021).

[104] *Brown v. Smith*, No. 18-193, 2019 WL 2411749, at *4 (W.D. Pa. June 7, 2019) (dismissing with prejudice common law assault and battery claim brought by incarcerated person against Department of Corrections employees).

[105] ECF 56-4 at Appendix 54, amended Complaint ¶¶ 48-49.

[106] *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original) (citations omitted).

[107] *Id.* (citation omitted).

[108] ECF 17.

[109] *Talley v. Varner*, 786 F. Appx 326, 329 (3d Cir. 2019) (citing *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).

[110] *Hunter v. Sutter*, No. 23-287, 2024 WL 5319122 (W.D. Pa. Nov. 27, 2024), *report and recommendation approved and adopted*, 2024 WL 72806 (W.D. PA. Jan. 10, 2025).

[111] *Id.* at *4.

[112] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[113] *Williams v. City of York, Pa.*, 967 F.3d 252, 258 (3d Cir. 2020) (quoting *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 241 (3d Cir. 2016) and *Santini v. Fuentes*, 795 F.3d 410, 418 (3d Cir. 2015)).

[114] The Officers appear to argue qualified immunity in the event we find fact issues precluding summary judgment on Mr. Batchelor's excessive force claim. ECF 56 at 17. The Officers contend even if there is a question about Mr. Batchelor's excessive force claims, he cannot show a one-second burst of pepper spray to gain control over a prison fight is a clearly established right.